LINCOLN NATL. LIFE INS. CO. *v.* REED.

5-2520                                           353 S. W. 2d 521

Opinion delivered February 12, 1962.

*Keith, Clegg & Eckert,* for appellant.

*Jeff Davis,* for appellee.

SAM ROBINSON, Associate Justice. The appellee, Reed, filed in the Union Circuit Court three suits on five policies of disability insurance. The cases were consolidated for trial and from judgments for the policy holder on all of the policies, the insurance companies have appealed. There is a suit against the Equitable Life Assurance Society of the United States on one policy; a suit against the Lincoln National Life Insurance Company on two policies (one of these policies was originally issued by the Reliance Life Insurance Company but was taken over and assumed by Lincoln); and a suit against the Guardian Life Insurance Company of America on two policies.

It is undisputed that originally all of the policies were delivered to Reed, the insured, in the State of Tennessee and were contracts made and entered into in that state and were Tennessee contracts. Later Reed moved to Arkansas; here his safe was robbed and all of the policies were stolen. The manner of the re-issuance of the Equitable policy and the Lincoln policies was such that it cannot be said they are not Tennessee contracts the same as were the originals. But the facts are different in regard to the issuance of the Guardian policies and we have concluded that they are Arkansas contracts.

We will first discuss the Equitable and Lincoln policies. They were issued and delivered to Reed while he was a resident of Tennessee. There is no contention that in the beginning they were not Tennessee contracts to be construed according to the law of Tennessee.

Reed claims that he became totally and permanently disabled before he became sixty years of age, but he gave no notice to the insurance companies of his alleged disability until after he became sixty-five years of age. All of the policies provide for waiver of premium and for monthly benefits for permanent and total disability beginning before the insured reaches age sixty; but the policies provide for notice to the insurance company of such permanent and total disability, and under the laws of Tennessee the giving of such notice within a reason-

able time from the commencement of the disability is a condition precedent to the right to recover. Such notice was not given. *Brumit* v. *Mutual Life Insurance Company of New York,* 178 Tenn. 48, 156 S. W. 2d 374, *Metropolitan Life Insurance Company* v. *Walton,* 19 Tenn. App. 59, 83 S. W. 2d 274. And, moreover, appellee concedes that under the terms of the Equitable policy, if the rights of the parties are to be determined by the law of Tennessee he cannot recover. Appellee says, ''We admit that if the substantive right of Reed in this suit against Equitable is to be determined by the law of Tennessee, he did not prove that he was totally and permanently disabled before age sixty in accordance with the law of Tennessee.'' The same thing is true of the Lincoln policies.

In several Arkansas cases it has been held that the giving of notice is a condition subsequent, and Reed argues that the policies should now be construed according to the law of Arkansas: first, because after moving to this State he borrowed money on the policies; second, because the policies were stolen in this State and the insurance companies replaced them; third, because he changed the beneficiary; fourth, because since 1930 notices of premiums due have been sent to him in Arkansas; and lastly, because he was domiciled in Arkansas at the time he became totally and permanently disabled. We do not think any or all of the things mentioned changed the Tennessee contracts to Arkansas contracts so as to cause the rights of the parties to be determined by the law of Arkansas.

To support his position appellee cites *Aetna Casualty and Surety Co.* v. *Simpson,* 228 Ark. 157, 306 S. W. 2d 117 and *State Farm Mutual Automobile Ins. Co.* v. *Fuller,* 232 Ark. 329, 336 S. W. 2d 60, but these cases merely hold that Arkansas law in matters of procedure should be applied to foreign contracts. Appellee also cites the California cases of *Blair* v. *New York Life Ins. Co.,* 104 P. 1075, *Baekgaard* v. *Carrerio,* 237 F. 2d 459 and *Braun* v. *New York Life Insurance Company,* 115 P. 2d 880. But those cases appear to be based on the

California Statute Sec. 1606, providing that contracts are to be construed according to the place of performance. Appellee also cites the cases of *Watson* v. *Employers Liability Assurance Corporation,* 348 U. S. 66 and *Clay* v. *Sun Insurance Office, Limited,* 363 U. S. 207, but we feel that our own cases are controlling, and that is: the law of the place where the contract is made prevails.

We said in *Prudential Insurance Co.* v. *Ruby,* 219 Ark. 729, 244 S. W. 2d 491, " 'Matters bearing upon the execution, the interpretation and validity of the contract are to be determined by the law of the place where it is made.' In *J. R. Watkins Medical Co.* v. *Johnson,* 129 Ark. 384, 196 S. W. 465, after quoting the language from *Howcott* v. *Kilbourn* we added: 'It is to be noticed that the rule extends to the interpretation of the contract, as well as to other questions relating to its enforcement, and that the interpretation placed upon the contract by the courts of the State where it is made will be accepted in other states for the purpose of testing its validity and of affording remedy of its enforcement.' " See also *John Hancock Life Insurance Co.* v. *Ramey,* 200 Ark. 635, 140 S. W. 2d 701.

It is said in Appleman on Insurance, Section 7092, "The validity, interpretation and obligation under a policy applied for, executed and delivered to the insured in one state has been held governed by the law of that state, though the insured subsequently moved elsewhere. The laws of the latter place apply only to remedy and procedure." And, in 44 C. J. S. page 514 it is said, "Where the place of contract has been fixed it may not be changed by an agreement as to where premium notices shall be sent or as to the payment of premiums to agents; by the subsequent payment of premiums in another state; by the fact that, in accordance with provisions in the policy, it has been converted to one of a different type, or the beneficiary has been changed, or interests in the policy have been assigned; or by the fact that the contract has been taken over by a foreign insur-

ance company, or thereafter a change of beneficiary, made pursuant to the terms of the policy, was made by endorsement on the original policy at the foreign company's office outside the state in which the contract was made.'' The rights of the parties in the Equitable and Lincoln policies must be determined by the law of Tennessee, and as heretofore pointed out, under the law of that state the policyholder's failure to give proper notice is fatal to his right to recover.

When appellee's policies were stolen from his safe in North Little Rock, the Equitable and Lincoln companies promptly issued substitute policies which did not become Arkansas contracts, but the circumstances surrounding the issuance of new Guardian policies were such as to make them Arkansas contracts. The Guardian Company required the insured and beneficiary to sign an affidavit including, ''Deponents hereby request and authorize the said company to cancel on its books the policy thus lost or destroyed and to issue in its place and as a substitute therefor a new one bearing a new number and a new date of issuance, but to be otherwise identical with the aforesaid policy lost or destroyed and in consideration of the issuance of the said substitute policy in the sum of $1.00 each of them in hand paid by said company, the receipt of which is hereby acknowledged by deponents [policyholder and beneficiary] jointly and severally have remised, released and forever discharged and by these presents do for themselves, their respective heirs, executors and administrators remise, release and forever discharge said company or its successors, . . .'' It appears that for a consideration the original Guardian policies were completely released and cancelled out and new policies were issued in Arkansas, making them Arkansas contracts. Since the Guardian policies are Arkansas contracts, the rights of the parties in those policies must be determined by the law of Arkansas.

Appellee recovered a judgment against Guardian on both policies for permanent and total disability for a

period beginning five years next before the commencement of the action. Guardian Policy No. 586582 provides for waiver of premium and payment of disability benefits, but the policy further provides, *"But such waiver of premiums shall not begin, nor shall such income payments begin as of a date more than one year prior to the date of the receipt by the company of the required proof of disability."* And Guardian Policy No. 586581 provides that the insurance company will *"Begin to pay to the insured the disability income stated on the first page hereof to be reckoned from the date of the receipt of such proof by the company at its home office.* Such payments shall be made on said date in each calendar month during the remaining lifetime of the insured so long as the disability continues, *and the amount to be paid on approval of such proof shall include any payment or payments that may have accrued from the date of the receipt to the date of approval of such proof by the company."* (our italics) The company will "waive payment of further premiums becoming due hereunder during such disability, save any unpaid premiums necessary to complete premium payments for the first policy year. Any premium or premiums for the current policy year other than the first policy year which shall have become due after the beginning of such disability and prior to approval of the proof thereof, and, if paid, be refunded."

The language of the Guardian policy first above mentioned, "But such waiver of premiums shall not begin, nor shall such income payments begin, as of a date more than one year prior to the date of the receipt by the company of the required proof of such disability" is so clear and unambiguous that it admits of no doubt as to its meaning. Its meaning could not be couched in any clearer language, and it means just what it says.

The same thing is true of Policy No. 586581 which provides that the insurance company will, "Begin to pay to the insured the disability income stated on the first

page hereof to be reckoned from the date of the receipt of such proof by the company at its home office. Such payments will be made on said date in each calendar month during the remaining lifetime of the insured so long as the disability continues, and the amount to be paid on approval of such proof shall include any payment or payments that may have accrued from the date of the receipt to the date of approval of such proof by the company.'' Thus, it will be seen that under this policy, disability payments are to be reckoned from the date of the receipt by the company of proof of disability. Reckoned, according to Webster, means computed, calculated, etc. In *McWilliams* v. *Comeaux*, 135 La. 210, 65 So. 112, the Court said, ''It is well settled in our jurisprudence that to 'reckon from' a particular day means that the reckoning begins from and after, and does not include, the day reckoned from. Hence, reckoning a period of ten years from February 13, 1901, excludes that day and includes the whole of the thirteenth day of February, 1911.''

Appellant argues that there is no substantial evidence that the insured became totally and permanently disabled within the meaning of the policy before he became sixty years of age in 1954. It appears that the insured had just about everything wrong with him that a person could have and still live, and his trouble was far advanced before he reached age sixty in 1954. In 1953 he was diagnosed as having obstructive emphysema. In 1954 he was diagnosed as having tuberculosis with a cavity in the upper left lobe of his lung, necessitating the removal of the lobe. In 1955 he was operated on for removal of a section of his colon. Later he was operated on for a large hernia, and at the time of the trial it needed repairing.

The insured had been with Lion Oil Company for a long time and was a valuable employee, earning $36,000.00 a year, and although much of the time he was in a helpless condition and in the hospital in New Orleans or in Tucson, Arizona, the company made no reduction

in his salary until 1957 when it was reduced to $25,000.00 a year. It appears that the company was very grateful for the services the insured had rendered, and being an exceptionally fine company, it, in effect, put the insured on a pension. It is not shown that Reed did any substantial amount of work subsequent to September, 1953. In fact, he was in such physical condition that it is hard to see how he did any work at all. In the circumstances it was a jury question as to whether he was permanently and totally disabled within the meaning of the policy. *Alexander* v. *Mutual Benefit Health and Accident Association*, 232 Ark. 348, 336 S. W. 2d 64.

Under the instructions of the court the jury was permitted to find for the policyholder from the commencement of his disability. To sustain this ruling of the court, the insured relies on *Smith* v. *Mutual Life Insurance Company of New York*, 188 Ark. 1111 and some other cases to the same effect. In the Smith case the Court held that under the terms of the disability policy involved, recovery could be had by the insured from the commencement of the disability. The policy did not provide that the insurance company would be liable for disability benefits only from a certain specified time. On the contrary, the Court said, "We think the language here employed is plain and definite to the effect that, if the insured suffers total and permanent disability prior to his sixtieth birthday, and at the time has paid all premiums due, liability then and there attaches, and recovery is postponed until notice or proof of loss is submitted." To the same effect is *Equitable Life Assurance Society* v. *Felton*, 189 Ark. 318, *Missouri State Life Insurance Company* v. *Foster*, 188 Ark. 1116. 69 S. W. 2d 869 and *Mutual Life Ins. Co. of New York* v. *Bowman*, 209 Ark. 1001.

But, in *Aetna Life Insurance Company* v. *Davis*, 187 Ark. 398, the Court gave effect to a provision in the policy limiting the time of recovery to a period of six months prior to the time the proof was furnished. There the Court said, "If therefore the disability exists

and commenced when the contract was in force, it is immaterial how or when proof is made, if within the statutory period, and recovery may be had for the damage sustained, *excluding that occurring beyond six months from the time proof is made."* (our italics). In *Aetna Life Insurance Company* v. *Langston,* 189 Ark. 1067, the Court cited with approval the above quoted language in the Davis case. In *Missouri State Life Ins. Co.* v. *Case,* 189 Ark. 223, the Court said, "This Court has often held that, unless it is inescapable from the language of the policy that notice of disability and proof thereof are conditions precedent to recovery, it is the existence of disability that fixes liability and not the proof thereof."

We think the language in the Guardian policies is inescapable to the effect that in one policy the company would pay for a time beginning one year before receiving proof of loss and the other policy the company would pay from a time beginning upon the receipt of proof of loss.

In the Case at Bar the insured gave the insurance company no notice of his disability until more than five years after the commencement of such disability. By requested instruction No. 3, refused by the trial court, appellant asked the court to submit to the jury the question of whether the insured gave reasonable notice of his disability. We think that instruction should have been given to the jury. In *Home Life & Accident Company* v. *Beckner,* 168 Ark. 283, 270 S. W. 2d 529, the Court held that the policyholder could not wholly ignore the requirements of the policy as to notice and said, "The question as to what would be a reasonable time, under the varying circumstances of each particular case, would seem primarily to be a question for the jury under proper instructions by the court." And in *Aetna Life Insurance Company* v. *Davis,* 187 Ark. 398, 60 S. W. 2d 912 the Court said, "The proof of disability is intended to give the insurer an opportunity to investigate the facts affecting the question of its liability and the

extent thereof." Some of the appellee's trouble occurred before he became sixty years of age and some of it occurred at a later time. In these circumstances it was a question for the jury as to whether the insured gave reasonable notice of his disability.

The judgments against Equitable and Lincoln are reversed and the causes dismissed. The judgment against Guardian is reversed and the cause remanded for a new trial.