**EDWIN F. ARMSTRONG & COMPANY, Inc., Plaintiff,**

v.

**BEN PEARSON, INCORPORATED, Defendant.**

**No. PB 66 C–26.**

United States District Court
E. D. Arkansas,
Pine Bluff Division.

Dec. 8, 1967.

A. F. House, Little Rock, Ark., for plaintiff.

Frank E. Chowning, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

### OREN HARRIS, District Judge.

This diversity action is based on a contract allegedly to have been consummated between the plaintiff, Edwin F. Armstrong & Company, Inc., and the defendant, Ben Pearson, Incorporated, for services rendered by the plaintiff to the defendant in obtaining a loan from lending agencies to provide working capital needed by the defendant in the operation of its business.

Edwin F. Armstrong & Company, Inc., is a corporation organized under the laws of the State of New York with its principal place of business in New York City. It is engaged principally in the business of assisting qualified borrowers in obtaining capital from lending agencies. Ben Pearson, Incorporated, is a corporation organized under the laws of the State of Arkansas with its principal place of business in Pine Bluff, Arkansas. The amount involved exceeds the sum of $10,000.00 exclusive of interest and costs. Jurisdiction is established and admitted. 28 U.S.C.A. § 1332.

Subsequent to the filing of the complaint on April 14, 1966, the defendant, by its attorney, filed a motion to dismiss the complaint on May 14, 1966, on the basis that the complaint failed to state a claim against the defendant upon which relief could be granted. Each of the parties submitted briefs having a direct bearing on the issues involved. The Court denied the motion to dismiss and proceeded to hear the case on its merits, which involved the same issues raised in the defendant's motion to dismiss.

The matter was tried to the Court on the record, ore tenus testimony, various and sundry exhibits, excellent briefs commenting on the testimony, analyzing the exhibits and a rather exhaustive analyses of the law applicable to the case.

This is a rather involved and highly complicated lawsuit based on a contract not in writing for services allegedly performed by the plaintiff toward the obtaining of a loan by the defendant of a substantial sum from Massachusetts Mutual Life Insurance Company of Springfield, Massachusetts. The contract and the alleged breach thereof involved in this litigation has to do with the commission to be paid by the defendant to the plaintiff. This is a conflict of laws issue on the validity and application of the contract. It is admitted by the parties that an oral contract was entered into and existed between them.

It is not clear from the testimony as to how the initial contacts came about. It is presumed that the New York office of the plaintiff provided the defendant with routine form information as is customary for new clients, which caused the president of the defendant from his office in Pine Bluff to contact plaintiff at its office in New York City. This initial contact resulted in the admitted contract between the parties by which the plaintiff would assist the defendant in obtaining a satisfactory loan of more than a million dollars and for the service the defendant would pay a commission or fee to plaintiff of one and one-half per cent of the first one million dollars and one per cent of any excess thereto. This was the proposed fee initially to be charged which is undisputed by the testimony in the case.

The primary question for determination is whether the law of New York governs as to the validity of the contract or whether it is governed by the law of Arkansas. If governed by New York law, it is invalid and therefore unenforceable. Section 5–701, General Obligations Law of the State of New York, McKinney's Consol.Laws, c. 24–A, provides that a contract to pay compensation for services rendered in negotiating a loan, etc., is void unless it is in writing and subscribed by the party charged therewith.

Since it is admitted that it is an oral contract and there was no note or memo-

randum in writing and subscribed to by the parties or a lawful agent, the statute of frauds of the State of New York would prevent its enforcement.

Should the validity of the contract be governed by Arkansas law it would be enforceable and the contract to pay compensation for such services would be collectible if the facts and circumstances justify.

■ The general conflict rule that Arkansas courts have applied heretofore is that the execution, interpretation and validity of a contract are to be determined by the law of the place where the contract was made.

There are two theories that could very well be applicable in determining the law that governs validity of a contract such as this. The doctrine of lex loci contractus if applied would require a determination as to the place where the contract was made.

The other theory which appears to be the trend generally followed more recently is the doctrine of most significant contacts in relation to the contract.

In deciding the case on either theory a brief summary of the facts should be stated.

At the outset a brochure supplied by the plaintiff to the defendant stated that the fee would be related to the amount of the loan and payable by the borrowers upon satisfactory completion of the financing. In a letter of February 22, 1965, from Mr. Powell, as president of Ben Pearson, Incorporated, to the plaintiff Armstrong advised that Pearson had some expansion plans and would be interested in visiting with one of the plaintiff's representatives. Subsequently, March 3, 1965, Mr. Armstrong made a visit to Arkansas at which time he discussed the matter with Mr. Powell and Ben Pearson. This was the first significant contact.

On March 5, 1965, Armstrong confirmed by letter the visit to Arkansas and conversation with Powell and Ben Pearson at which time he outlined their program of long term financing. In this confirmation in writing of the verbal discussion Mr. Armstrong again advised that the fee payable by the borrower upon satisfactory completion of the financing is based on the amount of the loan and the charge would be one and one-half per cent on the first million dollars and one per cent on the excess. He further advised in his letter of March 5, 1965, that "once you give me the go-ahead the next step would be for us to bring our lender down to meet with you and your people, to see your operation and etc."

On March 18, 1965, Mr. Powell in a letter to Armstrong advised that they were of the opinion that it would be wise to have "your people go over our operation and set up the conditions and requirements they would expect on the loan which we have discussed".

Pursuant thereto Mr. Armstrong called by telephone to Mr. Powell and requested certain information of the company's operation. Mr. Powell provided the requested information with a cover letter March 22, 1965. On March 30 by request Powell sent to Armstrong five copies of the company's audit report with a letter. There were telephone conversations which resulted in additional information from Powell on behalf of the defendant to the plaintiff. With this information Armstrong approached Massachusetts Mutual Life Insurance Company on an application of a loan for the defendant of some two million four hundred thousand dollars. On April 27, 1965, Armstrong wrote to Powell that Massachusetts Mutual had approved in principal of making a "term loan along the lines you and I discussed. I told them we had in mind two million four hundred thousand dollars at five and one-half per cent—fifteen years". In providing him with this good news Armstrong advised Powell the next step would be for us "to bring them to Pine Bluff", meaning Massachusetts Mutual. It could be arranged on a relative short notice. However, before he could ask them to travel he said he had to make to Massachusetts Mutual a firm offering. "Whenever you

are ready to proceed, just let me know and we can make the arrangements to bring them out on a couple of days notice."

On the same day there was another telephone conversation between them and a second letter of the same date, April 27, 1965, from Armstrong to Powell confirming "our conversation concerning the term loan we are to obtain for your company". He then undertook to set forth the details for a loan of two million four hundred thousand dollars. He again stated that the fee for his services would be one and one-half per cent of the first million dollars and one per cent on the excess.

It was again stated that a firm offering was necessary and that he, Armstrong, must have the application firm during the offering period. He asked for exclusive authority to run for a period of three weeks from the date of the acceptance of his letter (second letter of April 27, 1965). He asked Powell to sign an acceptance and approval in confirmation of "our agreement". Mr. Powell did not sign the acceptance and approval. They had a conversation about it and there was some uncertainty as to the amount of the loan desired by the defendant.

Armstrong went on a trip to Europe leaving May 5, 1965. He left the matter to his son to act "in my stead".

Mr. Powell subsequently called Armstrong, Jr., and questioned the amount of the fee to be charged by Armstrong. Mr. Powell asked for a "straight one per cent". Acting with authority Armstrong, Jr., agreed and took it upon himself to give approval of one per cent fee. Mr. Powell advised young Armstrong that he would talk to Mr. Pearson and they would be back in touch with him. On May 10, 1965, or a few days thereafter, Mr. Powell advised Armstrong, Jr., by telephone that he could bring a representative from Massachusetts Mutual to Pine Bluff, Arkansas, for the purpose of going over the operations and proceeding with arrangements for the loan.

A representative from Massachusetts Mutual and Armstrong, Jr., made the trip to Pine Bluff, which was the second most significant contact in relation to the contract.

The telephone call from Mr. Powell to Mr. Armstrong, Jr., to proceed with bringing a representative of Massachusetts Mutual to Pine Bluff was the last act toward the consummation of the contract with the adjustment of the fee to be charged of one per cent of the total amount of the loan. This final act was spoken in the telephone by Mr. Powell at Pine Bluff, Arkansas, to Mr. Armstrong, Jr., in his office at New York. Following the visit of Armstrong, Jr., and a representative of Massachusetts Mutual to Pine Bluff, the board of directors of Ben Pearson, Inc., adopted a resolution for the company to proceed with making the loan on the basis as described herein. This was the third significant contact made in relation to the contract which also was in Arkansas.

As a result, arrangements were made for Mr. Powell on behalf of Ben Pearson to go with Mr. Armstrong to Springfield, Massachusetts. Mr. Armstrong, Sr., had returned from Europe and he and Mr. Powell made the trip to Springfield on July 15, 1965. There was no meeting or discussion of the matter in New York. As a result of their visit to the home office of the Massachusetts Mutual in Springfield, a loan in the sum of one million five hundred thousand dollars was arranged and subsequently approved by formal action of the executive committee of Massachusetts Mutual. This was the fourth and final significant contact in relation to the contract between the parties.

There followed numerous telephone conversations and several letters between Messrs. Powell and Armstrong. On August 3, 1965, Powell advised Armstrong by letter that the action of the executive committee of Massachusetts Mutual in approving a million five hundred thousand dollars loan, the general outline of the prospective terms, together with other changes and additional revisions re-

ceived by telephone were acceptable, "it appears that these conditions will be acceptable".

On August 4, 1965, Mr. Armstrong wrote a letter to Mr. Sevey, Massachusetts Mutual, as follows: "Gary Powell phoned me yesterday and said his board of directors approved the loan on the terms which your company proposed and asked that I request to have your attorney proceed with the loan agreement."

On the following day, August 5, 1965, Mr. Joyce, Massachusetts Mutual, wrote Mr. Powell at Pine Bluff, Arkansas, that they were referring the matter to Mr. Jess Hay, a Dallas Attorney, for drafting the necessary documents.

In the meantime, Pearson became interested in another approach to their problem. The latter part of September, 1965, consideration was being given by Pearson for arrangements with another company, Laird & Company of New York. This information did not become available to either the plaintiff Armstrong or Massachusetts Mutual until the end of November. As a result of Ben Pearson Company considering the arrangement with Laird & Company any further contact or consideration of financing the loan from Massachusetts Mutual was deferred. On December 1, 1965, Ben Pearson Company requested that Massachusetts Mutual give them an extension until December 15, which was granted. By December 15, 1965, Pearson failed to carry out the loan agreement, which resulted in its cancellation. Arrangements from Laird & Company in an entirely different approach to their problem was consummated.

The testimony shows that a representative of Laird & Company contacted Massachusetts Mutual and Armstrong to satisfy them in their efforts toward the approved loan of Massachusetts Mutual and the services rendered by Armstrong. A nominal offer of a settlement was made to Armstrong which was unacceptable.

The burden of proof is on the party in establishing a proposition and the testimony is viewed in the light most favorable to the other party. In this case the plaintiff had the burden of establishing the contract and its performance for entitlement of the fee for its service. The defendant contends that the contract was consummated in New York and therefore governed by the laws of New York. The defendant has the burden of establishing this contention. The plaintiff contends that the one per cent fee agreed to by Armstrong, Jr., was modified to include the initial fee during a conversation when they were in Springfield, Massachusetts. The plaintiff has the burden of proving this contention.

From the testimony and exhibits thereto the Court is of the opinion as already stated herein that the final act and the consummation of the contract was by Mr. Powell on behalf of the defendant when he agreed by a telephone call that Mr. Armstrong, Jr., could bring a representative of Massachusetts Mutual to Pine Bluff, Arkansas, and, therefore, the place of making the contract was in Arkansas and governed by Arkansas law.

Under the second theory by which this case could very well be decided as most recently referred to under the Conflict of Laws theory is that the law of the state which has the "most significant contacts" with the matter in dispute governs. More recently the Restatement (2d) Conflict of Laws (Tent. draft) provides in part: "(1) The validity of a contract is determined by the local law of the state with which the contract has its most significant relationship." This has been the trend in recent years since the principle that the law of the place of contracting must govern has been so widely criticized. It is pointed out that one would expect that frequently the place of making the contract is merely fortuitous. The Courts of Arkansas have not as yet adopted this theory. It appears that the last pronouncement by the Supreme Court of Arkansas was

from a case originating in Union Circuit Court in 1961. Lincoln National Life Ins. Co. v. Reed, 234 Ark. 640, 353 S.W. 2d 521, 3 A.L.R.3d 637.

Effective December 31, 1961, the Arkansas Legislature enacted the Uniform Commercial Code. This principle was included in Section 85–1–105, Ark.Stat. 1947 Anno.

The Arkansas Supreme Court undertook to analyze what was referred to as a multiple-rule approach to choice of law in contract cases in 1963 in Cooper v. Cherokee Village Development Co., Inc., 236 Ark. 37, 364 S.W.2d 158. However, in this case, the contract in question provided that it was the express intention of the parties that the New York law should govern. Also, the Court held that on either of the three theories that might be followed New York law would govern. There are other Arkansas cases, but on review appear to the Court to be distinguishable.

The Court is of the opinion that in view of the more recent developments and particularly the new statutory choice of law rule to take the place of common law rules enacted in 1961, that the courts will tend to the new theory of the principle of the law of the state which has the most significant relationship with a contract such as the one involved in this dispute.

The Court is further of the opinion that the most significant contacts in relation to the contract in this case occurred in Arkansas. There is no contention that the Massachusetts law governs. The matters leading up to the first significant contact in Arkansas were primarily toward the effectuation of the contract. The matters occurring subsequent to the final most significant contact in Massachusetts were more or less clerical in nature.

It is undisputed that Armstrong, Jr., agreed with Powell that the fee would be adjusted to one per cent. The plaintiff failed in establishing the burden of proof that the initial charge was reinstated.

 The failure of the loan becoming final was due to the action of the defendant and was in no way the fault of the plaintiff. The amount of the approved loan acceptable to the defendant was a million five hundred thousand dollars. The fee of one per cent is fifteen thousand dollars.

It is a well-known rule of law that when a broker has earned his fee under a contract he is entitled to recover his commission even though the transaction failed, through no fault of the broker, but by the action of the party, in this case the defendant, Ben Pearson, Incorporated.

A judgment is being entered in the sum of Fifteen Thousand Dollars pursuant to this opinion.