JOHN MAUZY PITTMAN, Judge. | TThis case involves a motor-vehicle accident that occurred on September 10, 2009, in Arkansas. Appellants were traveling on Interstate 30 when they were struck head-on by a vehicle driven by Jerry Adams. Mr. Adams, who was determined to be at fault in that accident, had automobile insurance with a policy limit of $50,000. Appellant Cyrena Hoosier sustained severe injuries and incurred approximately $200,000 in medical bills. Mrs. Hoosier was an insured on an automobile-insurance policy issued by appellee Interinsurance Exchange (AAA) with a limit of $50,000 for damages caused by an underinsured motorist. Appellants brought an action against AAA asserting that they were entitled to underinsured-motorist benefits under their policy. The trial court granted summary judgment to appellee AAA, and this appeal followed. We affirm. The crucial question in this case is whether the law of California or that of Texas should be applied in interpreting the underinsured-motorist provisions of appellants’ ^insurance policy. The Arkansas Supreme Court has long held that matters bearing upon the interpretation of a contract are to be determined by the law of the place where it is made. Howcott v. Kilboum, 44 Ark. 213 (1884). Appellants were residents of California when their automobile-insurance policy was issued in that state on March 21, 2009, under the auspices of the AAA Automobile Club of Southern California. The policy expiration date was March 21, 2010. Part IV of the insurance contract sets out the terms of the uninsured and underinsured-motorist coverage (Coverage F). The definitions section of Coverage F provides that: Underinsured motor vehicle — means a motor vehicle which at the time of the accident is either: (a) insured under a motor vehicle liability policy or an automobile liability insurance policy; or (b) self-insured; or (c) covered under a cash deposit or bond posted to satisfy a financial responsibility law; but for an amount that is less than the limits shown in the declarations for COVERAGE F. The policy language mirrors the definition of underinsured motor vehicle set out by the California legislature in California Insurance Code § 11580.2(p)(2) (Deering 2009).[1] The meaning of this provision under California law is clear: | .^Underinsurance coverage does not apply unless the tortfeasor’s vehicle is an underinsured motor vehicle. An under-insured motor vehicle, by definition, is a vehicle insured for an amount that is less than the uninsured/underinsured motorist limits carried by the injured person. Thus, if the tortfeasor is insured for an amount equal to or greater than the uninsured/underinsured limits of the injured person, that person never gets to collect any underinsurance coverage. State Farm Mutual Automobile Insurance Co. v. Messinger, 232 Cal.App.3d 508, 283 Cal.Rptr. 493, 496 (1991). In the present case, the tortfeasor (Adams) was insured for liability for bodily injury in the amount of $50,000 per person. The uninsured/underinsured-motorist limits of the injured persons (appellants) were likewise in the amount of $50,000 per person. The amounts being equal, appellants’ underinsured-motorist coverage under their AAA policy was, under California law, never triggered, and they are not entitled to collect any underinsurance amount from AAA. See id. Recognizing this, appellants assert no claim under California law. Instead, they argue that the provisions of their insurance policy are governed by Texas law because they had moved to Texas three months before the wreck, as reflected on a change to the declarations page of their policy noting that their residence had changed to Houston, Texas, effective June 4, 2009, and that there would be no change to the premium. Appellant Joey Hoosier asserted that, when he went to appellee’s office and notified their insurer of their move, he was told that the policy “was converted to a Texas Policy.” The location of the branch office and the employee to whom Mr. Hoosier spoke were not identified. Appellants argue that this presented a question of material fact that precluded the grant of summary judgment, and that the trial court therefore erred by granting it. l4Summary judgment may be granted only when there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. Nationwide Mutual Fire Insurance Co. v. Citizens Bank & Trust Co., 2014 Ark. 20, 431 S.W.3d 292. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. Holt Bonding Co. v. First Federal Bank, 82 Ark.App. 8, 110 S.W.3d 298 (2003). On appeal from the grant of summary judgment, we determine if there are genuine issues of material fact in dispute by viewing the evidence in the light most favorable to the party resisting the motion and resolving any doubts and inferences against the moving party. Nationwide Mutual Fire Insurance Co., supra. As to the issues of law presented, our review is de novo. Id. Whether appellants’ move caused their California-issued insurance to be “converted to a Texas Policy” is a matter of law, not of fact, and we therefore afford no weight to the asserted hearsay statement of an unidentified branch-office employee in determining whether summary judgment was proper. Instead, we look to the insurance contract itself. Although the policy-change declarations page did reflect a change of residence by appellants, it expressly stated that “[tjhese declarations, together with the contract and the endorsements in effect, complete your policy.” The only reasonable conclusion to be drawn from this language is that the original California policy remained in effect despite appellants’ residence change. |fiThe only reference to a change of primary residence as affecting a policy provision appears in the “Guaranteed Renewal Endorsement” in which the insurer agreed not to cancel or refuse to renew the policy, but which stated that this agreement would become void upon the occurrence of specific enumerated events, including if “[y]our primary residence is outside the state of California.” Plainly, the agreement that would become void upon such a change of residence was the agreement to guarantee renewal; with respect to the policy per se, the Guaranteed Renewal Endorsement expressly provides that “[a]ll provisions of your policy not affected by this endorsement remain unchanged.” In the absence of any material change to the policy provisions upon appellants’ change of residence, the only remaining question is whether the change of residence from California to Texas had the legal effect of changing the state in which the insurance policy was issued. Under Arkansas law, it did not. The law of the place where the contract was made prevails. Lincoln National Life Insurance Co. v. Reed, 234 Ark. 640, 353 S.W.2d 521 (1962). The validity, interpretation and obligation under a policy applied for, executed and delivered to the insured in one state has been held governed by the law of that state, though the insured subsequently moved elsewhere. The laws of the latter place apply only to remedy and procedure. Id. at 643, 353 S.W.2d at 523. Affirmed. GLADWIN, C.J., and WALMSLEY and WOOD, JJ., agree. HIXSON and BROWN, JJ., dissent. . " 'Underinsured motor vehicle’ means a motor vehicle that is an insured motor vehicle but insured for an amount that is less than the uninsured motorist limits carried on the motor vehicle of the injured person.”