JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY
*v.* RAMEY.

4-5961                                    140 S. W. 2d 701

Opinion delivered May 13, 1940.

*House, Moses & Holmes* and *T. J. Gentry, Jr.*, for appellant.

*Ben B. Williamson* and *Shields M. Goodwin*, for appellee.

BAKER, J.   The appellee, Effie Ramey, was the beneficiary in an insurance policy in the amount of $1,000, is-

sued by the appellant company on the life of Rurie Ramey, daughter of appellee. The policy was applied for, the first premium paid thereon and it was delivered to the insured in the City of Detroit, State of Michigan, on the first day of October, 1938. The policy was the kind known as a non-medical policy, that is to say, the applicant for the insurance was not examined by any physician, but the company relied upon statements made by the applicant in regard to her health and physical condition. On October 13th, which was exactly twelve days after the issuance of the policy, the insured died in the Harper Hospital at Detroit, Michigan. The appellant now insists that the cause of death was: "Acute yellow atrophy of the liver, accompanied by tertiary syphilis and acute hepatitis." The insurance company made an investigation and discovered that two or three months prior to the application for the insurance the insured had given birth to a child at University Hospital, at Ann Arbor, Michigan, and had received post-natal care at the University Hospital in Detroit. The case was tried before the judge without the intervention of the jury.

There was a judgment for the face of the policy, 12% penalty and $150 attorney's fees. The appellant seeks a reversal upon the sole ground of a lack of liability because "it is clearly shown that the insured falsely and fraudulently answered certain questions in the application for the insurance in order to induce the appellant to write insurance upon her life."

The plaintiff, beneficiary under the said policy, was a resident of Stone county, Arkansas, and the suit was filed in that county and tried there.

The appellant urges, and we think correctly, that the policy issued was a Michigan contract and that rights and liabilities must be determined under the law of that state. While that is true, all procedural matters must be in accord with the law of the forum.

Preparatory to a discussion of all the rights involved, we suggest that the findings of fact by the trial court must be considered in the light most favorable to the appellee. Before beginning any statement of the

facts we have determined that the defense presented is an affirmative one and that unless it is supported by evidence, appellee had the right to recover upon the *prima facie* case made upon proof of issuance of the policy and death of the insured while the policy was in full force and effect. Attached to the policy was a copy of the application. Among the routine questions necessarily propounded by the insurance company to determine the state of health of the applicant were questions 34 and 35. Both questions are here copied with the answers given by the applicant.

"Question No. 34: Have you ever had or consulted or been treated by a physician or other person for any of the following? Answer yes or no to each. If yes, give full particulars in space below. Epilepsy? No. Nervous breakdown? No. Chronic cough? No. Indigestion? No. Coli? No. Goitre? No. Paralysis? No. Discharge from the ear? No. Blood spitting? No. Appendicitis? No. Kidney disease? No. Syphilis? No. Frequent or severe headaches? No. Rheumatism? No. Cancer or tumor? No. Consumption? No. Pleurisy? No. Ulcer of stomach or duodenum? No. High blood pressure? No. Disease of bladder or prostate? No. Any heart trouble? No. Any surgical operation? No.

"34. (a) Details of illnesses recorded above. None.

"35. Have you within the past five years had, or have you consulted or been treated by a physician or any other person for any disease disorder not included in question 34? Give full particulars. No."

It is now insisted that, at least, a part of the answer given to question No. 34 and that the answer given to question No. 35 were false and untrue; that if the answers had truthfully stated the facts, as they were later discovered by the insurance company the policy would not have been issued. We think it must be conceded, under the authority furnished us by appellant, in a somewhat exhaustive brief, that appellant's contention in this respect is correct. The conclusions we have reached, however, make it unnecessary to set forth the numerous decisions cited by the appellant company emanating from

the appellate courts of the State of Michigan, holding that false and untrue answers made to questions, material to the application, or, in other words necessarily essential for a determination of the true status or condition of the applicant, relied on by the insurance company, are sufficient to vitiate or void the policy or contract of insurance. This is the substantive law applicable in this case, provided proof of such material and false statements or misrepresentations appears.

Several witnesses were examined. Among them was a Mrs. Elaine Murphy. She testified by deposition that she had been connected with the Woman's Hospital since June of 1938; that she is a case worker with the Social Service Department of that hospital. She did not remember the insured, who was known as Miss Rurie Ramsey, as one of her cases, but met her in the hospital at the University of Michigan. She, Mrs. Murphy, had gone there to talk to Miss Ramsey in regard to her plans. She states that it appeared from the hospital records that Miss Ramey had been examined at the Woman's Hospital Clinic May 25, 1938, and from the laboratory report of May 27, 1938, it was recorded that Miss Ramey was eight months pregnant and had a "Wasserman plus-xxxx, a negative smear, and negative throat and nose cultures." Arrangement was made for Miss Ramey to enter University Hospital at Ann Arbor, Michigan, for anti-luetic treatment and delivery. After dismissal from that hospital, it was further arranged for a continuance of this anti-luetic treatment in the clinic of Harper Hospital in Detroit. Mrs. Murphy testified that she knows Miss Ramey was definitely aware that she was infected with syphilis at the time; says that she talked to her concerning these matters and the treatments given and also stated that she had similar conversations with her from time to time and that Miss Ramey received treatments which were given her both before and following the birth of her baby.

On cross-examination it was shown that prior to the filing of this suit attorneys representing the plaintiff, appellee here, wrote to Mrs. Murphy making inquiry to discover what was her knowledge of the physical condi-

tion of the insured, advising Mrs. Murphy the nature of the contest and the necessity of obtaining accurate information in preparation for the trial of the case. Mrs. Murphy admitted the receipt of the letter and acknowledged that she had answered, omitting all references to the facts in regard to syphilis, about which she testified later by depositions in this case. Her answer was to the effect that Rurie Ramey had been examined at the hospital, that a diagnosis of pregnancy was made; that she was transferred to the University of Michigan for housing and confinement care and that her baby was delivered there on the 18th of June and that she returned to Detroit the 5th of July. She was seen in Out-Patient Department of this hospital for post-natal care on August 15, 1938, and on August 29, 1938, and September 26, 1938. The final paragraph of the letter was: ''Her visits to our Gynecological Clinic were for examination and routine treatment following childbirth.''

Mrs. Murphy in her testimony attempts to explain the apparent and obvious contradiction in her testimony in this regard by saying that she was following a policy practiced to some extent not to give out unnecessarily any information in regard to any venereal disease, which might have a tendency to reflect unfavorably upon the patient.

Whatever may have been her good intentions, or however wholesome she, herself, may have deemed her reasons for a failure to divulge facts which she later testified were then within her knowledge, we cannot say that this conduct on her part was wholly without impairment of the value of her testimony and the court might properly have questioned its value in deciding the facts in this case, in the light of other developments in the proof. In the first instance, she says that the hospital records show facts which she herself does not purport to know independently of the records; that is, that the insured was afflicted with syphilis. The record, the best evidence, was not produced nor was any witness offered who made the record, nor was any physician examined who made the diagnosis and determined the matter divulged by this witness as a fact. We may not say as a

matter of law that the trial court erred in disregarding this testimony upon this particular matter. Objection was made at the time of the trial to the testimony of witnesses given who merely declared what the records showed without the production of these records; that is to say, the hospital reports of the different institutions attended by the insured. The court did not sustain the objection, except to state the decision would be a determination of the issues only upon competent testimony.

Another witness, a lady who was the Medical Record Librarian, at the Harper Hospital, testified in like manner to certain records and as to the contents thereof, and it was her statement that Miss Ramey was suffering, according to these records, from syphilis, and that she was given treatment at the Harper Hospital. She also stated that the records reflected that Miss Ramey's death was caused by "acute Yellow atrophy of the liver." She herself never saw the patient or insured, but testified solely from what appeared in records that were never introduced in evidence, or at least have not been abstracted for our consideration, nor is there any contention that these records constitute any part of the evidence before us. Two or three physicians testified, no one of whom stated that he knew of his own knowledge that the insured was afflicted as appeared from said records and each relied upon the report which he said he found in the records at the hospital. No one of these physicians told the insured that she had syphilis, or that she was treated for it.

Dr. Harry Weisburg testified that he personally examined Miss Ramey about the 25th of May; that his examination did not disclose that she was suffering from any disease at the time; he did not know that Miss Ramey received treatment at the Woman's Hospital. He did not even know the cause of her death; he also testified on cross-examination that is not true that he frequently diagnosed a case of syphilis without informing the patient that she was suffering from it.

Perhaps, it should be said in conclusion of our statement of facts that Miss Ramey, as she was called, was

married and had been divorced from her husband a few months prior to her death; that her baby was born about three months before she made application for insurance. She did not disclose in her medical examination these facts. In truth, it may be said that she concealed in her application the fact that she had been in the hospital, had been attended by a physician who gave her pre-natal and post-natal treatment on account of her confinement and birth of her child.

From the foregoing evidence, the court properly found, we think, that the appellant had not sustained the burden of proof in that the insured was afflicted with syphilis, or any other disease at the time she made application for and received her policy of insurance.

It has also been determined that childbirth is a physiological fact, one that frequently requires and perhaps always ought to have expert medical advice and attention, but notwithstanding that fact it was not a matter necessarily material to the application of insurance and there was no fraud in a failure to disclose these matters in the application. As to the records themselves, which were not introduced, we may say that some attention has heretofore been given to such suggestions. In *National Life & Accident Co.* v. *Threlkeld,* 189 Ark. 165, 70 S. W. 2d 851, it was determined that doctors and nurses who made hospital records were proper persons to testify with reference to them and that it was not proper to permit mere custodians to give testimony as to their contents. The trial court no doubt gave effect to this declaration of law and since no one who made any record identified the same, there was, in fact, no evidence legally sufficient that should be considered in a court of law for determination of the issues presented. *Progressive Life Ins. Co.* v. *Hulbert,* 196 Ark. 352, 118 S. W. 2d 268; *Bankers Reserve Life Co.* v. *Harper,* 188 Ark. 81, 64 S. W. 2d 327.

In the last cited case it was held that hospital records not made by the witness were not admissible in evidence. Surely, hearsay evidence in regard to facts or matters in hospital records would not properly be heard.

We have carefully examined the testimony of doctors and others and the strongest presentation made is that developed by Mrs. Murphy's deposition which we have heretofore considered. But, in Mrs. Murphy's letter which she sent in answer to plaintiff's counsel, she states positively and strongly the facts relating to the birth of the child and the pre-natal and post-natal attention at the hospitals. If this is considered most favorably as effecting the rights of the appellee, then Mrs. Murphy became a very strong witness for the appellee, and must now be so regarded since the decision of all the facts by the trial court. There is no evidence whatever that the insured ever had tertiary syphilis, or acute hepatitis though that matter is stated several times in appellant's brief and assumed as an established fact. And it may be added that Dr. Weisberg, the only physician who ever testified that he examined the insured, testified that she was not suffering from any disease.

We think, therefore, that the case must wholly depend upon the only proven or admitted facts that the insured did not disclose in her application the fact that she had been in the hospital on account of the birth of her child. Insurance companies that issue policies to women necessarily must consider that, in the ordinary course of nature, children may be born, and that childbirth is not an ailment or disease in the usual or ordinary sense of the term, nor will it matter in any such policy that information is not given in regard to such conditions. It was so held in the case of *Rasicot* v. *Royal Neighbors of Amer.*, 18 Idaho 85, 108 Pac. 1048, 29 L. R. A., N. S., 433; 138 Am. St. Rep. 180. In that case the applicant for insurance, in answer to a question as to whether she was pregnant, answered "No." She also said she had not consulted a physician in regard to any personal ailment. It developed she was pregnant and she had consulted physicians by reason thereof. A similar condition prevailed in another case in which there was a denial of pregnancy and later, in a health certificate, there was a second denial or reaffirmation of the answer given in the original application. Later, when the case was tried, it developed that the insured

had been pregnant about three months. A physician had examined her and she knew that fact when she signed the health certificate. Four months and nine days after she had executed this health certificate, death was caused by hemorrhage at childbirth. The lower court decided against the beneficiary. The Supreme Court of Nebraska, however, reversed that decision and held that the insurance companies which issue insurance upon the lives of married women of childbearing age, without anticipating the probability that the insured would become mothers could not defeat recoveries whether by rules or regulations in by-laws or articles of association, which provided for forfeiture in the event that the insured should become pregnant at any time. Such provisions were held void as against the highest principles of religion, morality and common decency. *Merriman* v. *Grand Lodge*, 77 Neb. 544, 110 N. W. 302, 8 L. R. A., N. S., 983, 124 Am. St. Rep. 867, 15 Ann. Cas. 124.

A similar conclusion was reached in the case of *National Council of Knights & Ladies* v. *Glenn*, 76 Fla. 592, 80 So. 516, 2 A. L. R. 1503.

So we must conclude that, although the insured did not give this information in regard to her pre-natal and post-natal treatments in hospitals on account of the birth of her baby or consultation with physicians in regard thereto, this was a matter wholly immaterial to the issue and by law not pertinent in a determination of the state of her health at any time.

It appears that it would be presumptuous, if not rather pedantic, to search out and present a great array of authorities supporting the conclusions reached by us and supported by the cases cited and by every rule of good sense and common reason.

Affirmed.