LUMBERMEN'S MUTUAL CASUALTY COMPANY v. MOSES.

5-494                                   271 S. W. 2d 780

Opinion delivered October 18, 1954.

*Shaver, Tackett & Jones,* for appellant.

*Arnold & Arnold* and *J. O. Moore,* for appellee.

WARD, J.  This appeal involves, for the first time in this court, an interpretation of certain portions of Act 274 of 1953 (Ark. Stats., § 34-2501 *et seq.*) which is often referred to as the Declaratory Judgment Act.  This Act apparently became the law of Arkansas as the result of an endeavor to have enacted in all states a Uniform Declaratory Judgment Act, and this has been accomplished in a large majority of the states.  The Arkansas Legislature, however, did not see fit to enact the proposed uniform law *in toto,* but made certain deletions and changes as will be hereinafter noted.

Appellants seek here to reverse the judgment of the trial court in sustaining a demurrer to their complaint, consequently no questions of fact arise, and our consideration of the record will be confined to the pleadings.

This suit is the result of a collision by an automobile driven by Moses with a truck belonging to East Texas Motor Freight Lines.  Appellants will be hereafter re-

ferred to as "Lumbermen" and "Rettig," and appellees will be referred to as "East Texas" and "Preferred" respectively.

*Complaint.* Lumbermen is a casualty insurance company and Rettig is an automobile agency engaged in the sale of cars. East Texas is engaged in operating a fleet of motor trucks in hauling freight, and Preferred is also an insurance company. Lumbermen executed and delivered to Rettig a garage liability policy in which it undertook to pay all sums which Rettig might become obligated to pay by virtue of bodily injuries and property damage. Preferred, executed and delivered a liability policy to appellee Moses in which it undertook to pay all sums which Moses might become obligated to pay by virtue of personal injuries and property damage occasioned by him while operating a motor vehicle. Moses was an employee of Rettig and as such had authority to drive and operate for demonstration purposes automobiles for sale. As such salesman for Rettig, Moses obtained permission to demonstrate a Nash automobile to a prospective customer who lived some 9 miles from Hope, Arkansas. It is alleged: That Moses, instead of so demonstrating and without the consent and against the policy of Rettig drove and operated the automobile for his own personal use and benefit to the city of Texarkana where he became intoxicated; that upon his return to Hope along Highway No. 67 in a drunken condition he carelessly, negligently and recklessly drove the said automobile against a truck owned and being properly operated by and on behalf of East Texas, thereby totally demolishing the Nash automobile and the truck at a damage to East Texas in the amount of approximately $2,000.00; that Moses claims he was acting within the scope of his employment when the accident occurred, and that Rettig is responsible for said damages; that East Texas claims Moses was primarily responsible for the damages; that Preferred claims Moses was acting within the scope of his employment and that Rettig is responsible, and Preferred is not obligated under its policy to Moses to pay damages to East Texas, and; that Lumbermen and Rettig

claim Moses was acting outside the scope of his employment and therefore Lumbermen is not liable for the damages under its policy to Rettig.

For the purpose of obtaining relief under said Act 274 the complaint alleges: That controversies of a justiciable nature exist between plaintiffs and defendants, involving the rights and liabilities under a *contract* of insurance between the plaintiffs, and involving the rights and liabilities under a *contract* of insurance issued by Preferred to Moses; that until such time as the liability of Lumbermen and Preferred has been determined by a judicial interpretation of the insurance contracts, Lumbermen and Preferred will be obligated under the terms of the policies issued by them to defend the property damage claims, and; that neither plaintiffs nor the defendants have sought any other legal action to adjudicate their respective rights under said insurance policies. The prayer was for a declaratory judgment construing provisions of said policies and determining the rights and liabilities of the plaintiffs and defendants, and declaring specifically whether or not Moses was acting in the scope of his employment.

*Answer of East Texas.* It alleges no knowledge or information regarding the allegations with reference to the issuance of the policy by Lumbermen to Rettig or the policy issued by Preferred to Moses or any controversies that might exist between any of the parties concerning the proper interpretation of said policies, but it admits the allegations of the complaint with reference to Moses driving the automobile while in a drunken condition and being responsible for the damages, and that Rettig was responsible if Moses was acting within the scope of his employment.

*Answer of Moses.* He denies all allegations in the complaint and alleges jurisdiction to be vested exclusively in the Workmen's Compensation Commission of this State.

*Demurrer by Preferred.* Preferred asks that the complaint be dismissed for the reasons that: 1. It does

not state facts sufficient to constitute a cause of action against Preferred; 2. It fails to state a claim against Preferred upon which relief can be granted, and 3: It does not "allege an actual or justiciable controversy or cause of action existing or to exist between Lumbermen and Rettig, on the one hand, and this defendant, Preferred, on the other hand; plaintiffs neither allege nor can they allege a claim or demand against this defendant, and the action is, therefore, not properly brought under the Arkansas Act for Declaratory Judgments, No. 274 of the 1953 Acts."

*Judgment.* The trial court sustained Preferred's demurrer to the complaint on the ground that the relief prayed for is not authorized by Act 274 of 1953, assigning four separate reasons therefor. The first, and apparently the principal, reason relates to the fact that said Act 274 does not contemplate an action for a declaratory judgment where the construction of a contract is involved. Other reasons given by the court relate to other matters, but since we agree with the trial court on the first ground stated, this opinion will be limited to that ground.

After a careful study of the provisions of Act 274 we have reached the conclusion that the Act makes no provision for Declaratory Judgments in regard to matters involving a *contract,* and it is conceded that an insurance policy is a *contract* between the insurer and the assured. The Uniform Declaratory Judgment Act in force in a majority of the states, as referred to above, does include *contracts,* but the section in the Uniform Act which includes the word "contract" was not adopted *verbatim* in Act 274, and all references to *contracts* are deleted. In order to clarify this opinion and to evaluate appellants' arguments, we copy below certain sections in the Uniform Act and in Act 274, and refer to other sections in both Acts.

Section 1 of both the Uniform Act and Act 274 reads exactly the same, and in general, grants to courts of record the power "to declare rights, status, and other legal relations whether or not further relief is or could be claimed."

Section 2 of the Uniform Act reads:

"2.    Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

The corresponding section in Act 274 reads:

"Section 2.    Any person interested under a deed or will whose rights, status or other legal relations are affected by a statute, municipal ordinance, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance or franchise and obtain a declaration of rights, status or other legal relations thereunder."

Section 3 of the Uniform Act, which is not in Act 274, reads:

"3.    A contract may be construed either before or after there has been a breach thereof."

Section 4 of Act 274 is the same as Section 5 of the Uniform Act and reads as follows:

"Section 4.    The enumeration in Sections 2, 3, and 4 does not limit or restrict the exercise of the general powers conferred in Section 1, in any proceeding where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty."

(It is noted that the figure "4" in the above section was evidently inserted by mistake.)

The Uniform Act also contains a section, Section 15, but no corresponding section is found in Act 274.    Said Section 15 reads as follows:

"This Act shall be so interpreted and construed as to effectuate its general purpose to make uniform the

law of those states which enact it, and to harmonize, as far as possible, with federal laws and regulations on the subject of declaratory judgments and decrees."

For all material considerations the Uniform Act and Act 274 are, otherwise, the same.

*The question presented* for our consideration therefore is: "Did the failure to include the word "contract" in § 2 of Act 274 have the effect of removing rights and liabilities under *contracts* from the purview of the Act?" Our study of Act 274 and the circumstances attending its adoption leads us to conclude in the affirmative.

As stated in *Terral* v. *Terral, Admx.,* 212 Ark. 221, 205 S. W. 2d 198, 1 A. L. R. 2d 1092, we are entitled to presume that the Legislature in enacting a statute has in mind court decisions pertaining to the subject-matter and to have acted with reference thereto. We likewise must conclude that the Legislature knew the provisions of the Uniform Act with reference to *contracts,* and that it had a purpose in deleting the word "contract" from Section 2 when it passed Act 274.

The Uniform Act was prepared by the National Conference of Commissioners on uniform state laws and appears in Vol. 9 of Uniform Laws Annotated, page 234, *et seq.* Many years prior to the passage of Act 274 the Bar Association of this State recommended to the General Assembly the adoption of the Uniform Act. The House Journal of 1953 shows that the Uniform Act (House Bill No. 170) was introduced in and passed by the House. When House Bill No. 170 reached the Senate it was amended, substituting Section 2 for the same numbered Section in the Uniform Act and was thus duly passed by both Houses of the Legislature.

It is ably argued by appellants that § 4 of Act 274, supplies the omission of all references to *contracts* in Section 2, but we do not think Section 4 grants this court the liberty to read into the Act something that it does not contain. This view was expressed in *Ohio Farmers Ins. Co., et al.* v. *Heisel, et al.,* 143 Ohio St. 519, 56 N. E. 2d

151, where the court quoted with approval from *Walker* v. *Walker*, 132 Ohio St. 137, 5 N. E. 2d 405: "That the Declaratory Judgment Act is a salutary, remedial measure and should be liberally construed and applied . . ., but the courts are without power to judicially legislate into the statute something clearly not placed there by the General Assembly."

To the same effect is the declaration in *Brindley, et al.* v. *Meara, et al.*, 209 Ind. 144, 198 N. E. 301, where the court, referring to a liberal interpretation clause in a similar Act, stated at page 305: ". . . but this provision affects only the construction of the act for the purposes for which it was intended, and has no reference to liberality in construction that would extend the provisions of the law beyond the field of its purpose." Section 1 of the Act must be construed, we think, merely as granting to courts the *"power* to declare rights, status and other legal relations. . . ." Sections 2 and 3 enumerate the subject-matter over which the jurisdiction of the courts shall be exercised in granting declaratory judgments. It was necessary for the legislature to enact Section 1 because the common law did not empower the courts with this jurisdiction and neither did any previous legislative enactment of this state do so.

It is noted also that Section 4 is limited to situations where the "Judgment or decree will terminate the controversy or remove an uncertainty," but, because of the ground on which we have chosen to rest our decision, it is not necessary to decide whether such a situation obtains in the case under consideration.

There are other reasons which we briefly mention and which lead us to conclude that the legislature intended to exclude all consideration of *contracts* from Act 274. One is, that Section 3 of the Uniform Act (copied above) was deleted. Another is: If we should give to § 4 of Act 274 the broad implication urged by appellants, then Sections 2 and 3 of the Act are meaningless. Furthermore the legislature omitted entirely Section 15 of the Uniform Act which enjoins a uniform interpretation to conform to similar acts in other states and the federal

act. This omission carries with it, we think, a clear implication that Act 274 was considered to be a material departure from the Uniform Act—a situation incompatible with appellants' contention.

Affirmed.

Justice McFADDIN concurs.