503 S.E.2d 857

**Pamela L. NELSON, Plaintiff Below, Appellee,**

v.

**ALLSTATE INDEMNITY COMPANY, Defendant Below, Appellant.**

No. 24139.

Supreme Court of Appeals of West Virginia.

Submitted June 9, 1998.

Decided June 18, 1998.

Susan R. Snowden, Martin & Seibert, Martinsburg, for Appellant.

Marvin L. Downing, See & Downing, Moorefield, for Appellee.

PER CURIAM: [1]

■ This matter arises from an order of the Circuit Court of Grant County granting summary judgment against Allstate Indemnity Company, appellant/defendant, (hereinafter Allstate) in a declaratory relief action brought by Pamela Nelson, appellee/plaintiff, (hereinafter Ms. Nelson). Allstate has assigned as error the circuit court's ruling that (1) West Virginia law applied to underinsured automobile insurance purchased by Ms. Nelson from Allstate in the state of Maryland and (2) in finding that Ms. Nelson's deceased son was an insured under the policy.

## I.

### FACTUAL BACKGROUND

Ms. Nelson moved to the state of Maryland with her husband at some point in 1994 or early 1995.[2] Ms. Nelson purchased an automobile insurance policy from Allstate while living in Maryland. The policy covered the period April 22, 1995 to October 22, 1995. The underinsured provision in the policy provided a per person liability limit of $20,000.00.

On May 17, 1995, Ms. Nelson's son, Malcom B. Harris, died from injuries sustained in a single car accident in Grant County, West Virginia.[3] At the time of the accident the car was being driven by Ms. Nelson's former husband and Malcom's father, Michael Harris.[4] On October 27, 1995, Ms.

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley*, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4. (1992).

2. Ms. Nelson had previously lived in West Virginia.

3. The accident occurred on May 16, 1995.

4. The record indicates that Malcom was seven years old at the time of his death.

Nelson filed an action against Mr. Harris personally and as administrator of Malcom's estate.[5] Subsequent to filing this action Ms. Nelson amended her complaint to add Allstate as a defendant. The claim against Allstate was for a declaratory finding that the underinsured policy was enforceable under the laws of West Virginia [6] and that Malcom was an insured under the policy.[7]

Ms. Nelson moved for summary judgment against Allstate. By order entered October 31, 1996 the circuit court granted summary judgment to Ms. Nelson. The order specifically held:

> The Plaintiff's decedent, Malcolm B. Harris, at the time of his death had a dual residency that is he was a resident both of the household of Plaintiff, Pamela L. Nelson, and of his father, Richard Harris, and that as a resident of the State of West Virginia, he is entitled to the protection of West Virginia's public policy and that therefore West Virginia law applies to the policy provisions to be interpreted in the within cause.

Allstate appeals the granting of summary judgment.

## II.

### STANDARD OF REVIEW

■ This Court's standard of review concerning summary judgment is well settled. As this Court stated in syllabus point 3 of *Aetna Casualty and Surety Co. v. Federal Insurance Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963), "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Moreover, we note that, upon appeal, the entry of a summary judgment is reviewed by this Court de novo. Syl. pt. 1, *Koffler v. City of Huntington*, 196 W.Va. 202, 469 S.E.2d 645 (1996); Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

## III.

### DISCUSSION

■ Allstate correctly noted that the dispositive issue in this case is whether Maryland or West Virginia law applies to the insurance policy issued to Ms. Nelson. The circuit court found that Ms. Nelson was a resident of Maryland and that the policy in question "was entered into and agreed upon in the State of Maryland." The circuit court's sole basis for holding that West Virginia law was applicable to the insurance policy was as follows: "That 'anti-stacking' provisions are valid and legal under the laws of the State of Maryland but are repugnant to the policy of the State of West Virginia, and therefore are invalid under West Virginia Law."

In *Nadler v. Liberty Mutual Fire Insurance Co.*, 188 W.Va. 329, 424 S.E.2d 256 (1992) this Court considered the issue of whether residents of Ohio injured in an automobile accident in West Virginia could have the benefit of our underinsured motorist law based upon our public policy, even though the Nadler's insurance policy was issued in Ohio.[8] In that case the parties agreed that under Ohio law the underinsured motorist coverage was offset by the amount recovered under applicable liability policies.[9] The liability payments in *Nadler* exceeded the underinsured coverage limits. Therefore, if Ohio law applied, there was no recovery. The same factual situation exists in this case. That is, liability coverage through Mr. Harris' policy was $50,000.00. The underinsured policy limit under Ms. Nelson's policy was

---

5. Ms. Nelson sought to have Mr. Harris removed as administrator of Malcom's estate, so that Malcom's estate could bring a wrongful death claim against Mr. Harris for negligently causing his death.

6. The insurance policy contained anti-stacking language which precluded recovery of underinsured proceeds pursuant to Maryland law.

7. Mr. Harris had a separate insurance policy on the vehicle in which Malcom was killed. Malcom's estate and Ms. Nelson were paid by Mr. Harris' insurance the policy limit of $50,000.00.

8. Ms. Nelson's brief refers this Court to the decision in *Clark v. Rockwell*, 190 W.Va. 49, 435 S.E.2d 664 (1993). *Clark* was a per curiam opinion. *Clark* has no dispositive weight in this proceeding.

9. This same offset exists under Maryland law.

$20,000.00. Under Maryland law, Ms. Nelson's policy would be offset by the recovery from Mr. Harris' policy. The circuit court rejected this analysis. The circuit court found Maryland's motorist laws "repugnant to the public policy" of West Virginia.

In *Nadler* we discussed the issue of another state's motorist coverage law being so foreign to our public policy principles that West Virginia would refuse to enforce it in a lawsuit resulting from an automobile accident occurring in West Virginia. We provided the following analysis of West Virginia public policy regarding uninsured and underinsured motorist coverage:

> Our substantive law governing uninsured and underinsured motorist coverages in motor vehicle insurance policies is intended to apply only to insurance transactions which occur in West Virginia or which affect the rights and responsibilities of West Virginia citizens. For this reason, the public policy of full compensation underlying our uninsured/underinsured motorist law is implicated only when the parties and the transaction have a substantial relationship with this state. The importance of the public policy is directly proportional to the significance of that relationship. The more marginal the contact West Virginia has with the parties and the insurance contract, the less reason there is to consider the public policy behind our uninsured/underinsured motorist law as a factor bearing on the choice of law determination.

*Nadler*, 188 W.Va. at 337, 424 S.E.2d at 264.

 In *Nadler*, we ruled that the Ohio plaintiffs were bound by the Ohio law since most of the substantial contacts existed in Ohio with regard to their insurance coverage. In *Nadler* we set out in syllabus point 3 the following rule of law:

> The mere fact that the substantive law of another jurisdiction differs from or is less favorable than the law of the forum state does not, by itself, demonstrate that application of the foreign law under recognized conflict of laws principles is contrary to the public policy of the forum state.

Under *Nadler*, there is no conflict between the public policy of our law and that of Maryland. *See* Syl. pt. 2, *Lee v. Saliga*, 179 W.Va. 762, 373 S.E.2d 345 (1988) ("The provisions of a motor vehicle policy will ordinarily be construed according to the laws of the state where the policy was issued and the risk insured was principally located, unless another state has a more significant relationship to the transaction and the parties"). The circuit court should have found that the policy in this case was governed by the state of Maryland. To rule otherwise would establish the exception that insurance contracts executed in other states would always be subject to West Virginia substantive law if the automobile accident occurred in West Virginia and if validly presented before our courts. Such a situation would render a nullity to conflict of laws principles.[10]

## IV.

### CONCLUSION

In view of the foregoing the circuit court's order is reversed.

Reversed.

Maryland law applies in this case.

---

10. The second issue, residency of Malcom, is moot based upon this Court's determination that