SOUTHERN FARM BUREAU CASUALTY INSURANCE
COMPANY *v.* Gary and Veronica CRAVEN

CA 02-543 89 S.W.3d 369

Court of Appeals of Arkansas
Division I
Opinion delivered November 13, 2002

*Laser Law Firm*, by: *Karen Hughes* and *Brian A. Brown*, for appellant.

*Bachus Schumacher & Schanker, L.L.C.*, by: *J. Kyle Bachus*; and *Brazil, Adlong & Winningham, P.L.C.*, by: *Matthew Adlong*, for appellant.

S AM BIRD, Judge. Appellant, Southern Farm Bureau (SFB), appeals a summary judgment entered by the White County Circuit Court in favor of appellees, Gary and Veronica Craven. The trial judge ruled that Colorado law rather than Arkansas law governed SFB's obligation to provide no-fault insurance coverage to appellees. We reverse and remand with instructions to enter summary judgment in favor of appellant.

Veronica Craven, an Arkansas resident, was injured in an automobile accident in Colorado on June 2, 2001, while riding in a minivan owned by her and Gary Craven, her husband. The van was registered and principally garaged in Arkansas, and it was insured by SFB under a policy issued in Arkansas. The policy provided $5000 in personal injury protection (no-fault) medical coverage, the minimum required by Arkansas law. *See* Ark. Code Ann. § 23-89-202(1) (Repl. 1999).

Following the accident, SFB paid Mrs. Craven the $5000 limits of her policy's no-fault medical and hospital benefits protection. Thereafter, SFB received a letter from Mrs. Craven's Colorado attorney seeking coverage for additional no-fault benefits claimed to be available to Mrs. Craven under Colorado law. Colorado's no-fault law differs markedly from Arkansas's in that Colorado law requires minimum no-fault medical expense benefits of $50,000 per person per accident. *See* Colo. Rev. Stat. Ann. § 10-4-706(b) (West 2001).

Upon receiving Mrs. Craven's request for additional no-fault benefits, SFB filed a petition in White County Circuit Court seeking a declaration that Arkansas law would apply to determine the amount of coverage it owed to the Cravens. The Cravens answered and denied that Arkansas law applied. Thereafter, SFB filed a motion for summary judgment that included the affidavit of district claims manager Don Alpe. In his affidavit, Alpe stated that SFB was a Mississippi company authorized to do business in Arkansas but not in Colorado; that the Cravens' policy was written in Arkansas by an Arkansas agent covering vehicles that were registered and principally garaged in Arkansas; and that SFB had paid $5000 in no-fault medical benefits to satisfy Mrs. Craven's medical bills, of which only $738.38 was paid to Colorado providers. Also attached to SFB's motion was a certified copy of the Cravens' policy. The policy provided that, as to no-fault medical benefits, SFB's liability would not exceed $5000 for each covered person.

The Cravens responded to SFB's motion with their own motion for summary judgment and argued that (1) all motor vehicles operating in the state of Colorado were required to comply

with Colorado's compulsory insurance coverage laws, (2) choice of law considerations dictated that Colorado law should apply to determine the amount of no-fault coverage owed by SFB, and (3) SFB's policy contained a provision that would require it to comply with Colorado's no-fault laws. The trial judge granted the Cravens' motion, and this appeal followed.

■ ■ Normally, in an appeal from a summary judgment, the evidence is viewed most favorably to the party resisting the motion, and any doubts and inferences are resolved against the moving party. But when the parties agree on the facts, we need only determine whether the appellee was entitled to judgment as a matter of law. *See Aloha Pools & Spas, Inc. v. Employer's Ins. of Wausau*, 342 Ark. 398, 39 S.W.3d 440 (2000). In a case such as this one, where both sides moved for summary judgment and thus, in essence, agreed that there were no material facts remaining, summary judgment was an entirely appropriate means for resolution of the case. *See McCutchen v. Patton*, 340 Ark. 371, 10 S.W.3d 439 (2000).

Issues regarding conflict of laws in auto insurance cases are especially challenging due to the fact that although the insurance contract may be issued in one state, events triggering coverage may happen in another state. In *Bohannan v. Allstate Ins. Co.*, 820 P.2d 787 (Okla. 1991), the Oklahoma Supreme Court recognized that:

> [o]ur mobilized society and the divergent directions and purposes of the statutory and judicial developments in motor vehicle insurance law of the various states breed multistate conflict of laws issues in motor vehicle insurance or accident litigation.

*Id.* at 790.

■ Choice-of-law questions regarding insurance coverage have traditionally been resolved by applying the law of the state where the insurance contract was made (the *lex loci contractus* rule). *See* Robert A. Leflar, Luther McDougal, & Robert Felix, *American Conflicts Law* § 153 (4th ed. 1986); *Restatement (Second) Conflict of Laws* § 193 (1971). *See generally John Hancock Mut. Life Ins. Co. v. Ramey*, 200 Ark. 635, 140 S.W.2d 701 (1940) (holding that the rights and liabilities of the parties to an insurance contract should

be determined with regard to the law of the state where the contract was made). The *lex loci contractus* rule generally comports with the reasonable expectations of the parties concerning the principal situs of the insured risk, and it furnishes needed certainty and consistency in the selection of applicable law. *See State Farm Mut. Auto. Ins. Co. v. Simmons*, 84 N.J. 28, 417 A.2d 488 (1980).

■ Despite the easy applicability of the *lex loci contractus* rule, courts sometimes consider, in addition to the place where the contract was made, which state has the most "significant contacts" with the issue at hand. *See id*. The contacts to be taken into account include (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *See Restatement (Second) Conflict of Laws* § 188 (1971). Arkansas courts have not applied the significant contacts analysis in a case involving an insurance contract, but it has been applied in the case of ordinary contracts. *See Ducharme v. Ducharme*, 316 Ark. 482, 872 S.W.2d 392 (1994); *Standard Leasing Corp. v. Schmidt Aviation, Inc.*, 264 Ark. 851, 576 S.W.2d 181 (1979).

■ We believe that, whether the *lex loci contractus* rule or the significant contacts analysis is applied, the insurance contract in the present case is governed by Arkansas law. It is undisputed that the insurance contract was made in Arkansas. Further, virtually all significant contacts are with the state of Arkansas. The insureds are Arkansas residents, the insurance contract was written through an Arkansas agent, the insured vehicles are registered and principally located in Arkansas, and the policy complies with Arkansas law regarding minimum coverages. The only contact with the state of Colorado is that it was the situs of the accident. Where the only connection with a state is that it was the site of the accident, the state's contact is not significant enough to merit application of its law. *See, e.g., State Farm. Mut. Auto. Ins. Co. v. Simmons, supra; Fortune Ins. Co. v. Owens*, 132 N.C. App. 489, 512 N.E.2d 487 (1999); *Nelson v. Allstate Indem. Co.*, 202 W.Va. 289, 503 S.E.2d 857 (1998).

 The Cravens contend that we should apply choice-of-law rules applicable to tort actions rather than contract actions. They refer in particular to the traditional rule that, in tort cases, the law of the state where the accident occurred is controlling (the *lex loci delicti* rule). We disagree that the *lex loci delicti* rule should apply here because this is a contract case. The issues revolve around an insured's attempt to recover benefits directly from her own insurance company. An insurance policy is a contract between the insurer and the insured. *See Lumbermen's Mut. Cas. Co. v. Moses*, 224 Ark. 67, 271 S.W.2d 780 (1954). Additionally, our supreme court has recognized that the *lex loci delicti* rule need not be mechanically applied, and has considered, in addition to that rule, five choice-influencing considerations established by Professor Leflar to determine which state's law should govern: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. *See Wallis v. Mrs. Simpson's Pie Co.*, 261 Ark. 622, 550 S.W.2d 453 (1977). The application of the five considerations here, particularly regarding the predictability of results and simplification of the judicial task, favors Arkansas law. While an insurer and an insured may not be able to predict where an automobile accident may occur, they will always know the state where the contract was entered into, where the insured resides, and where the insured automobiles are registered.

 The Cravens express concern that, if we apply Arkansas law in this case, Mrs. Craven may be precluded from recovering the full amount of her medical expenses. They refer to the fact that under Colorado law, a victim is prohibited from recovering damages from a tortfeasor that are recoverable as no-fault benefits from her insurer. *See* Colo. Rev. Stat. Ann. § 10-4-713(1) (West 2001); *Hickenbottom v. Schmidt*, 626 P.2d 726 (Colo. Ct. App. 1981). A victim must, therefore, seek compensation for her first $50,000 in medical expenses from her own insurer, through no-fault coverage. The Cravens claim that if Mrs. Craven's no-fault recovery is limited to $5000 under Arkansas law, she will be left without recourse for the next $45,000 in medical expenses. We disagree that this prediction will come to pass. The Colorado

statutes prohibit "any person eligible for direct benefits described in section 10-4-706(1)(b)" from recovering those benefits from the tortfeasor. *See* Colo. Rev. Stat. Ann. § 10-4-713(1) (West 2001). Because we hold that Mrs. Craven's no-fault claim is subject to Arkansas law, it follows that she is not "eligible" for Colorado no-fault benefits and thus is not affected by the concomitant Colorado law restricting recovery against the tortfeasor. In fact, having recovered no-fault benefits under Arkansas law, she may proceed in tort as allowed by Arkansas law to recover from the tortfeasor. *See* Ark. Code Ann. § 23-89-206 (Repl. 1999) (retaining tort liability arising from the ownership, maintenance, or use of a motor vehicle). This would not do violence to the Colorado laws because its drivers are required to carry liability insurance. *See* Colo. Rev. Stat. Ann. § 10-4-706(1)(a) (West 2001).

 We are aware that our decision, by applying Arkansas's no-fault law, is contrary to Colorado statutes and court decisions. Colorado law requires every owner of a motor vehicle who operates the vehicle on the state's public highways to have in full force and effect a "complying policy." Colo. Rev. Stat. Ann. § 10-4-705(1) (West 2001). *See also Ranger v. Fortune Ins. Co.*, 881 P.2d 394 (Colo. Ct. App. 1994). However, we are not bound to follow Colorado's law in determining the rights of an Arkansas resident under a policy of insurance issued in this state. In *Orintas v. Meadows*, 17 Ark. App. 214, 706 S.W.2d 199 (1986), the Meadowses, who were residents of Ohio, were injured in a car accident in Arkansas. As a result, they received workers' compensation benefits from their employer, an Indiana corporation. They also hired an Arkansas attorney, Orintas, to pursue a claim against the estate of the other driver, who was an Arkansas resident. Orintas procured a $50,000 settlement. A dispute then arose as to the amount of Orintas's fee, which would have been greater under Indiana law than Arkansas law. Orintas argued that an Indiana statute required that Indiana law should be followed when one of its workers was injured in another state. We said:

> We do not agree that we are bound by Indiana law. *Carroll v. Lanza*, 349 U.S. 408, 412 (1955), stated that "the Full Faith and Credit Clause does not require a State to substitute for its own

statute, applicable to persons or events within it, the statute of another State reflecting a conflicting and opposed policy."

*Id.* at 217, 706 S.W.2d at 201.[1] We hold that this reasoning also applies to the circumstances of our present case, in that Colorado law will not be substituted for our own.

Finally, we address the argument that SFB's policy, by its own language, requires the application of Colorado's no-fault law. The policy includes the following provision:

*Compulsory Auto Insurance Law or Financial Responsibility Law*

If an auto accident to which this policy applies occurs in any state or province other than Arkansas, we will interpret your policy for that accident as follows:

1. If the state or province has:

 a. A financial responsibility or similar law specifying limits of liability for bodily injury or property damage higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

 b. A compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

SFB argues that this provision applies only to liability coverage because it is contained in the policy's liability section. Other courts that have considered this question agree that similar conformity-of-coverage provisions, because of their location in the liability section, apply only to liability coverage. *See Frost v. Liberty Mut. Ins. Co.*, 828 S.W.2d 915 (Mo. Ct. App. 1992); *Jarrett v. Pennsylvania Nat'l Mut. Ins. Co.*, 400 Pa. Super. 565, 584 A.2d 327 (1990); *State Farm Mut. Auto. Ins. Co. v. Tennessee Farmers Mut. Ins. Co.*, 645 N.W.2d 169 (Minn. Ct. App. 2002).

---

[1] We also note that, even though *Orintas* applied Arkansas law in a case involving non-residents who were injured in a car accident here, we were not primarily concerned with the rights of those residents but with the rights of an Arkansas citizen, the attorney Orintas, regarding the amount of his fee.

In determining the meaning of a clause in an insurance policy, the whole policy is considered. *See Continental Cas. Co. v. Didier*, 301 Ark. 159, 783 S.W.2d 29 (1990). The SFB policy is clearly divided into sections that are applicable to particular types of coverage. The above-mentioned provision is contained only in the liability coverage section of the policy. Therefore, we agree with SFB that the provision applies only to SFB's responsibility to provide liability coverage that conforms to the minimum financial responsibility laws of other states, not to first-party, no-fault coverage.

For the reasons stated, we reverse the trial court's grant of summary judgment in favor of the Cravens and remand the case with directions to enter summary judgment in favor of SFB. Our holding makes it unnecessary for us to address SFB's argument that the application of Colorado law in this case would be unconstitutional.

Reversed and remanded.

JENNINGS and CRABTREE, JJ., agree.