KENNETH S. HIXSON, Judge, dissenting. On the facts of this case I believe the trial court erred in applying California law to the Hoosiers’ underinsured-motorist claim against | fithe appellee. Because Texas law should have been applied, I dissent from the majority’s holding and would reverse and remand. In this case the parties agree that if California law applies, the Hoosiers are not eligible to receive UIM benefits. However, if Texas law applies, the Hoosiers are entitled to UIM benefits assuming their damages exceed the limits of the tortfeasor’s policy as they claim. In deciding whether California or Texas law should apply, there are two significant Arkansas cases. In reaching its conclusion that California law applies to this case, the majority relies on Lincoln Life v. Reed, 234 Ark. 640, 353 S.W.2d 521 (1962). Lincoln generally stands for the proposition that the doctrine of lex loci contractus (lex loci) should apply in a choice-of-law insurance case. Lexi loci provides that the law of the jurisdiction where the contract was entered into should apply. One of the primary rationales behind the lex loci rule is that the law associated with the location of risk should control. The supreme court in Lincoln held that, where the insured purchased several disability policies in Tennessee and later moved to Arkansas, the law of Tennessee applied to his disability claim. The second case is Southern Farm Bureau Casualty Insurance Co. v. Craven, 79 Ark.App. 423, 89 S.W.3d 369 (2002). In that case, the Cravens were Arkansas residents and purchased an auto-insurance policy through Southern Farm Bureau. The Cravens were injured in an accident in Colorado, and they asked the Arkansas court to apply Colorado law, which mandated significantly higher UIM coverage than that required under Arkansas law. The trial court declined to apply Colorado law, and we affirmed. |7In Craven, we acknowledged that choice-of-law questions regarding insurance coverage have traditionally been resolved by applying the lex loci rule. However, we also observed that, in addition to the easy applicability of the lex loci rule, courts sometimes consider, in addition to the place where the contract was made, which state has the most “significant contacts” with the issue at hand. The contacts to be taken into account include (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. Craven, supra. We noted in Craven that Arkansas courts have hot applied the significant contacts analysis in a case involving an insurance contract, but it has been applied in the case of ordinary contracts. See Ducharme v. Ducharme, 316 Ark. 482, 872 S.W.2d 392 (1994). In Craven, we held that whether the lex loci rule or the significant contacts analysis was applied, the insurance contract at issue was governed by Arkansas law. That was because although the traffic accident occurred in Colorado, the auto-insurance contract was made in Arkansas, and virtually all significant contacts were with the state of Arkansas. The insureds were Arkansas residents, the contract was written through an Arkansas agent, the insured vehicles were registered and principally located in Arkansas, and the policy complied with Arkansas law regarding minimum coverages. It should be noted that the insurance policy at issue in Lincoln was a disability policy as opposed to an automobile policy, and the underwritten risk for disability would not be significantly different for Tennessee versus Arkansas. It should also be noted that the Lincoln |8court relied in part on the 1962 version of Apple-man on Insurance, and that since that time there have been significant changes to insurance law and in the itinerant nature of our society in general. While the lex loci approach was dominant in 1962, the “significant contacts” test has since gained popularity. The 2013 version of Appleman is more on point than the 1962 version cited in Lincoln. Appleman on Insurance § 6.02[2][a] (2013) provides in part: The lex loci rule was adopted in the first Restatement of Conflict of Laws in 1934. The primary virtues of the rule were thought to be simplicity and certainly, although its application has become more complex in modern times. Once the majority rule, it is now followed by only ten states. [Arkansas was not cited as one of the ten states]. Under the modern Restatement 2d rule, the most significant relationship test is now the majority approach, as many states have found the traditional lex loci test too rigid in its application. Restatement 2d § 193 provides, “The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy,” unless some other state had a more significant relationship to the transaction and the parties. Apple-man on Insurance § 6.02[3][b] (2013). Similarly, C.J.S. on Insurance, also cited in Lincoln, more recently sets forth the significant relationship test. 44 C.J. S. Insurance § 28 (2007) provides: Fire, surety and casualty insurance: In the absence of an effective choice of law by the parties, the validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood to be the principal location of the insured risk during the term of the policy unless with respect to the particular issue, some other state has a more significant relationship .... For purposes of this test, an insured risk is the object or activity |flwhich is the subject of the insurance, and it has its principal location in the state where it will be during at least the major portion of the insurance period. Under this test, even if the principal location of the risk shifts to some state other than the state at the time of contracting, application of the law of the other state would not be unfair to the insurance company if the insurance company had reason to foresee there might be a shift in location (emphasis added). Turning to the facts in the case at bar, the auto-insurance policy purchased by the Hoosiers in March 2009 was undeniably a California policy at that time. The insurance contract issued in California contained a “guaranteed renewal endorsement” providing that the agreement became void in the event that the Hoosier’s residence was outside of California. However, in June 2009 Joey Hoosier notified his insurance agent that the Hoosiers had moved from California to Texas, and in his affidavit Mr. Hoosier stated that the agent informed him that the insurance contract was converted to a Texas policy and that no additional premium was required. The appellee insurance company, IEAC, was authorized to issue insurance policies in Texas, and in June 2009 it acknowledged the move to Texas and issued a new declaration sheet reflecting the new Texas address. In my view, this case is governed by Texas law whether we use the lex loci contractus approach or the significant contacts approach. Even though the contract was originally made in California, it was effectively reissued in the state of Texas after the Hoosiers moved there and IEAC issued a written policy change for a change of residence, with a policy-change effective date of June 4, 2009. Even under lex loci, one of the most important underlying rationales is the location of the risk. Here, the location of the primary risk was in Texas, and IEAC was fully aware of that location. Under the significant relationship approach, all the | ^contacts are in Texas. The only relationship with California is that California is probably where the premiums were sent. Therefore, in my view the trial court erred in applying California law and thereby entering summary judgment for IEAC. Because Texas law should have been applied, and the parties agree that under Texas law the Hoosiers may make a claim for underinsured-motorist benefits in excess of the tortfeasor’s policy limits, the summary judgment should be reversed. I would reverse the summary judgment and remand for a trial for the Hoosiers to present evidence of their damages. BROWN, J., joins.