**Freda E. KING, Plaintiff-Respondent-Appellant,**

v.

**NEW EMPIRE INSURANCE COMPANY, a Corporation, Defendant-Appellant-Respondent.**

Nos. 23614, 23618.

Kansas City Court of Appeals.

Missouri.

Dec. 3, 1962.

---

Frank P. Barker, Frank P. Barker, Jr., Wayne F. Caskey, Jr., Barker, Fallon, Jones & Barker, Kansas City, for appellant.

James J. Wheeler, Keytesville, for respondent.

BROADDUS, Judge.

This is an action based upon a policy of accident insurance. Plaintiff recovered a verdict and judgment for $2000, the indemnity provided for in the policy, and from that judgment, defendant has appealed. The trial court refused to submit the issue of vexatious refusal to pay to the jury and from that order plaintiff has appealed.

The defendant company insured Emery E. King "against loss resulting directly and independently of all other causes from bodily injury sustained during the term of this policy and effected solely through accidental means." It is admitted that insured died on October 17, 1960; that the policy was in full force and effect, and that plaintiff Freda E. King is the named beneficiary.

On October 17, 1960, at about 4:30 p. m. a Santa Fe freight train enroute to Kansas City approached the trestle bridge across Grand River at Dean Lake, Chariton County, Missouri, at 50 miles per hour. There is approximately a one and one-half mile straightway approach to this bridge from the east. The main double-track lines of the Santa Fe Railroad run across this trestle in a generally east-west direction.

The plaintiff, after offering in evidence the policy of insurance and a portion of the death certificate, called to the witness stand Mr. David J. Edwards. Mr. Edwards testified that he resided in Bosworth, Missouri, where he was engaged in the undertaking and furniture business; that he had known Emery E. King for approximately 15 years; that in the afternoon of October 17, 1960, at around 2 o'clock Mr. King came into the witness' store; that "he (King) said that if he was transferred from Snyder, on the section, to Bosworth, he was going to buy a home there which he had been looking at that day and he was interested in buying some furniture. And he said he didn't intend to drive back and forth because it was too far." When asked how Mr. King "appeared with reference to health" the witness replied: "Well, he was all right as far as I know because he was just like he always was when he came into the store to buy from me, he was the same." The witness further testified that about 4:50 p. m. that day he was called by the Santa Fe operator from Carrollton to go out and pick up a man that was hurt on the Grand River Bridge; that when he got to the bridge he "found Mr. King was dead * * * the body was warm, limber * * and he had no head to speak of except a little bit here (indicating), it was all, I never saw any of the rest of it;" that a Santa Fe train was standing there, and "there was a pair of oars just a short distance from Mr. King's body."

Plaintiff also called as a witness Mr. Chester McAfee who resided at Mendon and was a track supervisor for the Santa Fe Railroad. He testified that he had known Mr. King for about 20 years, and was acquainted with the latter's habits in

connection with fishing; that "he (King) kept a boat at the Grand River Bridge"; that the boat was kept "on the east side" of the bridge and "the oars on the west side"; that "ordinarily he (King) drove in on the west side of the bridge and picked them (the oars) up, he ordinarily went across the bridge"; that the train which struck King was "an extra" or "non-scheduled" train.

On behalf of defendant Mr. L. B. Hawkins testified that he was the engineer of the freight train; that when the engine was "roughly five, six or seven hundred feet" from the bridge "I looked down there and I seen something and I thought it was just a dog; I whistled to scare the dog off. It never moved. Well, I got about eight car lengths (400) feet of it and I see it was a man, and I whistled again and he never moved and then I applied the brakes; it looked to me like he was laying down between the two main lines with his hands up like this (indicating) and his head on the rail." On cross-examination he testified that it was a "hazy day"; that the bridge over Grand River has steel beams across its top and sides which cause shadows to be cast, and makes it difficult to distinguish an object from a shadow; that he did not give a series of short whistles which is customary when a person is seen on the track for the reason he "didn't recognize it being a man in time to do so." "Q. And all you could do was put on the brakes, you didn't have time to do nothing? A. That is what I did, yes. Q. So you just got a glimpse of him when you put on the brakes, is that right? A. Yes, sir."

The testimony of the fireman, Jessey Payne, was substantially the same as that given by Mr. Hawkins, the engineer.

Defendant's first point is that the trial court erred in overruling its motion for a directed verdict at the close of all the evidence.

In passing upon this contention we are bound by certain well established rules which are clearly set out in the case of Winter v. Metropolitan Life Ins. Co., 129 S.W.2d 99, 103 (Mo.App.) as follows:

"It has been held by our Supreme Court that the trial court should never withdraw a case from the jury unless all reasonable men in the honest exercise of their impartial judgment would draw the same conclusion from the facts; and that, under conflicting evidence sufficient to support a verdict for either party, there can be no directed verdict. Parrent v. Mobile & O. R. Co., 334 Mo. 1202, 70 S.W.2d 1068. It has also been held that a demurrer to the evidence can be sustained only when the facts and the evidence and the legitimate inferences therefrom are so strongly against the verdict as to leave no room for reasonable minds to differ. Young v. Wheelock, 333 Mo. 992, 64 S.W.2d 950, 953, 954. See also Linderman v. Carmin, 255 Mo. 62, 164 S.W. 614, 615."

In the case of Meadows v. Pacific Mut. Life Ins. Co., 129 Mo. 76, 31 S.W. 578, the body of the deceased was found mangled on a railroad track. In holding that the plaintiff made a submissible case, the court said:

"The plaintiff showed, beyond controversy, that Daniel Meadows died by violent injuries, which were plainly visible upon his body; that the nature of these injuries left no doubt that they were the sole cause of his death; and proper proofs were made. Here he rested. He had made a *prima facie* case, unless we are required to presume that, because he was killed by being run over by cars on a railroad track, he was voluntarily exposing himself to unnecessary dangers, and was violating his agreement in regard to being upon a roadbed of a railroad, within the meaning of the policy. Such a presumption would destroy the presumption indulged by the law that Meadows was, at the time, exercising proper care for his safety." The Court goes on to say (l. c. 583, 584):

"It follows that, by invoking these presumptions, Plaintiff not only established a death by violence, but that his intestate was in the exercise of ordinary care and pru-

dence when he met his death, and that it was caused by accident. Nor is this presumption rebutted by the unexplained fact that his body was found mangled upon a railroad track."

As was said by this court in Klinginsmith v. Mutual Benefit Health & Accident Ass'n., 228 Mo.App. 229, 64 S.W.2d 705, 706: "As to the defendant's assignment of error as to the court's refusal to give peremptory instruction, we conclude that, as it was clearly shown that the death was violent, it is for the jury to determine from all the facts and circumstances in evidence as to whether or not the death was accidental."

As said in Mayhew v. Travelers' Protective Ass'n., 52 S.W.2d 29, 32 (Mo.App.): "It is well-settled law that in an action on an accident insurance contract, such as is in suit here, the burden is on the plaintiff to show that the death of insured resulted from an accident. But by showing that the cause of death was violent, the plaintiff establishes *prima facie* that the death was accidental."

In the case of Caldwell v. Travelers Ins. Co., 305 Mo. 619, 267 S.W. 907, 39 A.L.R. 56, the case chiefly relied upon by defendant, the insured was operated on for hernia. There was no evidence of any mischance, slip or mishap nor of any unexpected, unusual, or unforeseen occurrence during the performance of the operation, but the insured died 5 days later from obstruction of the bowel. The court held plaintiff must show something unforeseen, unusual, or unexpected and unintended occurred during the progress of the operation and that this something caused insured's death.

The Caldwell case is clearly not in point with the case at bar, the most obvious difference being the Caldwell case was not concerned with violent death. Also, in the Caldwell case, the insured intended to be operated on, and died as the natural (but not foreseen) result of this act.

The case of Murphy v. Western & Southern Life Ins. Co., 262 S.W.2d 340 (Mo. App.), also relied upon by defendant is not in point. The insured's death was the result of his taking an excessive amount of medicine, which had been prescribed by his physician. The insured knew what he was taking and the only thing unexpected was the result. Thus it was not an accident within the terms of a policy insuring against injury by accidental means.

And the case of Pettit v. United Benefit Life Ins. Co., 277 S.W.2d 857 (Mo.App.), does not support defendant's contention. In that case the court held that plaintiff did not prove a fall, and also failed to prove that death resulted from a fall.

Other cases cited by defendant, by reason of their facts, are also readily distinguishable from the instant case.

■ Defendant in its brief makes much of the testimony of the engineer and fireman that they did not see the deceased move prior to being hit by the train. Both testified that visibility was poor, with shadows on the bridge; that they first thought they saw a dog, and did not give the required whistles to alarm a person on the track. This testimony is far from convincing and the jury could well have found that they were not keeping as careful a look-out as they indicated. In any event, this testimony is not binding upon plaintiff. This because of the settled rule that the jury is the sole judge of the credibility of the witnesses and the weight and value of their evidence and may believe or disbelieve the testimony of any one or all of the witnesses, though such evidence is uncontradicted and unimpeached. Greenwood v. Wiseman, 305 S.W.2d 474 (Mo.Sup.)

Beyond dispute the evidence established that the deceased on the day of his death was hit by a freight train and his head torn from his body. He was in apparent good health, discussing plans for the future, less than three hours before his death. Apparently he was crossing the bridge, as had been his habit, to fish. The oars to his boat

were found lying near his warm, limber body.

 Following the rule that in determining whether plaintiff made a submissible case for the jury we are to view the evidence and the legitimate inferences to be drawn therefrom in the light most favorable to plaintiff, compels us to rule the point against defendant.

Defendant next contends that the court erred in admitting in evidence the following portion of the death certificate:

> "18. Cause of death
> Part 1. Death was caused by:
> (A) Immediate cause—
> head injury."

Defendant asserts that this entry was a conclusion of the coroner. The court sustained defendant's objection to 18 "(b) was hit by Santa Fe train", and "(c) on Santa Fe Bridge over Grand River", and also to 20 "(a) accident" and (b) "Hit by Santa Fe Freight train on Grand River Bridge."

Section 193.170 V.A.M.S. provides that: "Certificates filed within six months after the time prescribed therefor shall be *prima facie* evidence of the facts therein stated."

██ In the case of Crollard v. Northern Life Ins. Co., 240 Mo.App. 355, 200 S.W.2d 375, this court held that the presumption of regularity obtains in respect to death certificates.

In the case of Boring v. Kansas City Life Ins. Co., 274 S.W.2d 233 (Mo.Sup.) the plaintiff introduced in evidence the death certificate, which recited the cause of death to be "(a) Shot through head by 16-gauge shot gun" and "(b) also two other shots into abdomen by a 16-gauge shot gun." The court in commenting on the death certificate said:

"As hereinbefore stated, plaintiff relied upon the well grounded doctrine that the certificate of death alone raised a legal presumption that insured's death resulted from accidental means, which placed upon defendant the burden of going forward with evidence to establish its pleaded defense of non-accidental death."

The case of Frank v. Atlantic Life Ins. Co., 211 S.W.2d 940, 942 (Mo.App.), also holds that the certificate of death establishes *prima facie* the cause of death to be as therein stated.

In the case of Simpson v. Wells, 292 Mo. 301, 237 S.W. 520, the appellant insisted that the trial court committed error in overruling its objection to the admission in evidence of the death certificate. There our Supreme Court reviews many decisions dealing with the admissibility of public records. One of the cases quoted from is by this court, Reynolds v. Prudential Ins. Co., 88 Mo.App. 679, where it was said: "[W]here the law requires certain statements to be made, (in the death certificate) then the record of those statements is evidence of the things stated." In rejecting appellant's contention in the Simpson case the court said: "Unless the coroner's certificate, after investigation, is treated as *prima facie* evidence as to those matters required to be incorporated therein, it would be utterly useless as a public document."

In the case of Schmidt v. Supreme Council of Royal Arcanum, 207 S.W. 874 (Mo. App.), cited by defendant, it was contended the death certificate made a *prima facie* case of suicide because it contained the words, "contributory suicide." The court found that apparently the death certificate recited findings of the coroner's jury. The case is not in point with the case at bar. Even if it were, the parts criticized in the Schmidt case merely correspond to the parts excluded in the case at bar.

In Callahan v. Connecticut General Life Ins. Co., 357 Mo. 187, 207 S.W.2d 279, also cited by defendant, the court was considering whether the part of the death certificate stating death was due to "accident" was proper. In the instant case, the only part of the death certificate admitted was the part stating the cause of death was "head injury", and, in the instant case,

whether or not the head injury was received due to accident was submitted to the jury.

In Felker v. Metropolitan Life Ins. Co., 288 S.W.2d 26 (Mo.App.), cited by defendant the coroner was not present at death and had not seen the body. The coroner changed the death certificate to reflect information given him by plaintiff. This is a far cry from the instant case, where the coroner completed the death certificate from information obtained by his investigation.

There is no evidence in the transcript to support the statements made in defendant's brief that the coroner came to the conclusion the deceased suffered a head injury based on what others evidently told him, and there is nothing in the record to support the statements the coroner "didn't see any head injury and didn't know what caused death." The contention lacks merit.

Defendant's final contention is that the court erred in giving at plaintiff's request Instruction No. I "in that it misstated the defendant's liability under the terms of the policy of insurance and did not require the jury to find that death was inflicted solely through accidental means."

The Instruction is as follows:

"The Court instructs the jury that if you find and believe from the evidence that Emery E. King died on or about the 17th day of October, 1960, from injuries received by him when struck by a freight train on a railroad bridge across the Grand River, and independently from all other causes, if so, and if you further find and believe from the evidence that the injuries, if any, so received by Emery E. King were the result of accident, then the Court instructs the jury that the Plaintiff, Freda E. King, is entitled to recover the sum of two thousand dollars ($2000.00) from the defendant, New Empire Insurance Company, on the Insurance Policy here in question."

At the request of the defendant, the court gave Instruction No. 2, which reads as follows:

"The Court instructs the jury that before the Plaintiff can recover she must prove by the preponderance or greater weight of the evidence that deceased lost his life as a result of bodily injuries effected solely through accidental means, directly and independently of all other causes. You are further instructed that before an injury effected solely through accidental means can be found, there must be an act, which precedes the injury, in which something unforeseen, unexpected, or unusual occurs which produces the injury. Unless you believe, therefore, that the plaintiff has established by a preponderance of the testimony that the death of said Emery E. King was caused by accidental means, alone, and independently of all other causes, then your verdict must be in favor of the defendant.

"In this connection you are instructed that if you find from all the evidence that in being or lying on the railroad track the insured acted in the manner he intended to use, and so doing was run over by a train then the insured's death was not the result of accidental means and Plaintiff cannot recover."

As we read Instruction I it requires the jury to find that insured died from *one* cause, to-wit: "from injuries received by him *when struck by a freight train * * * and independently of all other causes.*" It further requires a finding that the injuries so received were accidently inflicted. Perhaps the instruction is not as definite as it should have been, but when it and Instruction 2 are read and construed together we fail to see how the jury could have been misled.

The rule governing the instant situation is stated in the case of McDaniel v.

McDaniel, 305 S.W.2d 461, 467, 468 (Mo. Sup.), as follows:

"Certainly, if an instruction, purporting to cover the whole case and authorize a verdict, leaves out a fact, essential to recover, it is erroneous; and it is not cured by another instruction requiring the finding of such fact because in such a situation the instructions are in conflict. Hatfield v. Thompson, Mo.Sup., 252 S.W.2d 534; Banta v. Union Pac. R. Co., 362 Mo. 421, 242 S.W.2d 34; McDonald v. Kansas City Gas Co., 332 Mo. 356, 59 S.W.2d 37. However, as further stated in the McDonald case (59 S.W.2d loc. cit. 40,) 'instructions must be read and construed together'; and 'if the plaintiff's instruction, covering the whole case and authorizing a verdict, does require the finding of all essential elements of the plaintiff's case, but states some of these indefinitely or ambiguously or in language which might be misleading, then an instruction on the part of the defendants which clearly and specifically requires the finding of essential elements does not conflict with the plaintiff's instruction, but instead makes it clear and definite'; and so 'when all of the instructions thus harmonize and when read together correctly state the law, any such indefinite, ambiguous or misleading language in the plaintiff's instruction is cured by the other instructions.' The main instruction in the McDonald case authorizing a plaintiff's verdict although indefinite as to an essential element (timely knowledge of a defendant that gas was escaping into a basement) was held cured by a definite instruction given at the defendant's request." (Citing cases.)

We have reached the conclusion that the court did not err in refusing to submit the issue of vexatious refusal to pay to the jury. Our Statute, Sec. 375.420 V.A.M.S., relating to penalties is to be strictly construed. The penalty should not be inflicted unless the evidence and circumstances show that the refusal to pay was willful and without reasonable cause as the facts appeared to a reasonable and prudent man before the trial; and merely because the judgment, after trial, is adverse to defendant's contention, is no reason for inflicting the penalty. Patterson v. Ins. Co., 174 Mo.App. 37, 44, 160 S.W. 59. Defendant had reasonable cause, as the facts appeared to it, to defend this action.

The judgment is affirmed. All concur.