NEW EMPIRE LIFE INSURANCE COMPANY v.
FRED BOWLING

5-4129                                              411 S. W. 2d 863

Opinion delivered February 20, 1967
[Rehearing denied March 27, 1967.]

1. INSURANCE—ACTION ON POLICIES—QUESTIONS FOR JURY.—Contention that insurer was entitled to a directed verdict under Missouri law because insured's death was not effected by accidental means held without merit where the jury could have concluded that loss of control of vehicle was attributable to accident rather than intention, and plaintiff's proof showed insured's death to be a violent one.

2. INSURANCE—ACTIONS ON POLICIES—WHAT LAW GOVERNS.—Action on an insurance policy issued by a Missouri corporation was properly maintainable in Arkansas where insured resided when the policy was issued, which is an adequate basis for application of Arkansas law allowing penalty and attorney's fee.

3. INSURANCE—COSTS & ATTORNEY'S FEES—REVIEW.—Judgment modified on cross appeal to include 12% penalty and attorney's fee of $1,500.

Appeal from Conway Circuit Court, *Wiley W. Beam*, Judge; modified and affirmed.

*Gordon & Gordon*, for appellant.

*George J. Cambiano*, for appellee.

George Rose Smith, Justice. This is an action brought by the appellee to recover the $5,000 death benefit payable under a policy insuring his son, Jerry Bowling, against injury or death "resulting directly and independently of all other causes from bodily injury . . . effected solely through accidental means." At the trial the jury's verdict was for the plaintiff in the full amount of the policy. The insurer contends that it was entitled to a directed verdict for the reason that under Missouri law, which the trial court found to be controlling, the insured's death was not effected by accidental means.

In January, 1964, the elder Bowling, a resident of Arkansas, received by mail an advertisement of an accident policy issued by the appellant, a Missouri corporation. Bowling applied for a policy upon his nineteen-year-old son Jerry, sending the application and premium to the insurer's principal office in Missouri. The company issued the policy and delivered it by depositing it in the mails in Missouri. In the past we have held that in such circumstances the policy is to be governed by the law of Missouri. *State Mutual Fire Ins. Assn. v. Brinkley Stave & Heading Co.*, 61 Ark. 1, 31 S. W. 157, 29 L. R. A. 712, 54 Am. St. Rep. 191 (1895).

In November, 1964, Jerry was living in Arkansas but was working in Oklahoma. On November 23 he and a companion, Donnie Nixon, spent most of the day riding around in or near Keota, Oklahoma. They stopped several times to drink beer at taverns. The evidence indicates that at about ten o'clock that night Jerry was driving their car at great speed on a highway near Keota. Donnie was asleep. Jerry lost control of the car, which skidded on and off the highway for about 450 feet before plunging into a gravel pit filled with water. Donnie managed to escape, but Jerry was drowned.

Was Jerry's death effected through accidental means? In Missouri the leading case upon this issue was originally that of *Caldwell v. Travelers' Ins. Co.*, 305 Mo. 619, 267 S. W. 907, 39 A. L. R. 56 (1924). There the

court made a choice between two lines of authority, which it summarized in these words:

"There are two clearly defined lines of cases on this question. One holds that, where an unusual or unexpected result occurs by reason of the doing by insured of an intentional act, where no mischance, slip, or mishap occurs in doing the act itself, the ensuing injury or death is not caused through accidental means; that it must appear that the means used was accidental, and it is not enough that the result may be unusual, unexpected, or unforeseen.

"The other line of cases holds that, where injury or death is the unusual, unexpected, or unforeseen result of an intentional act, such injury or death is by accidental means, even though there is no proof of mishap, slip, or anything out of the ordinary in the act or event which caused such injury or death."

After reviewing the authorities at great length the court elected in the *Caldwell* case to adopt the first of the two rules, by which there must be some accidental element in the doing of the intentional act that causes the injury or death. It is accordingly argued in the case at bar that the insurance company is not liable, because Jerry Bowling intentionally drank beer to the point of intoxication and in that condition intentionally drove at a speed estimated by a highway patrolman to have been between 90 and 100 miles an hour. Under those circumstances, counsel say, Bowling's death cannot be regarded as unforeseeable or unexpectable.

We must reject this argument, for either of two reasons. First, Donnie Nixon testified that Jerry was not drunk that night. If the jury accepted that testimony it would follow that Jerry's death was the result of his losing control of the car while driving at an excessive speed. Unquestionably the jury could have concluded that the loss of control was itself attributable to accident rather than to intention. Secondly, the more re-

cent Missouri cases hold that when the plaintiff's proof shows that the insured's death was violent, as it was in the case at bar, there is a prima facie case for submission to the jury. *King* v. *New Empire Ins. Co.*, Mo. App., 364 S. W. 2d 40 (1962); *Ward* v. *Penn Mutual Life Ins. Co.*, Mo. App., 352 S. W. 2d 413 (1961).

Since the judgment must be affirmed even under the law of Missouri, we do not reach the question whether the more liberal rule of substantive law that prevails in Arkansas ought to govern in a case such as this one. In recent years many principles in the field of conflict of laws have undergone re-examination—a process that is still in progress. Courts are taking a second look at the older inflexible approach by which in certain fact situations the law of a particular jurisdiction is to be woodenly applied, even though there may be a sound basis in public policy or simply in common sense for preferring the law of some other jurisdiction. We touched upon this point in *McGinty* v. *Ballentine Produce*, 241 Ark. 533, 408 S. W. 2d 891 (1966), but there, as here, we did not find it necessary to take a stand in the matter.

With respect to the narrow issue involved in the case at hand we may appropriately say that there are good reasons for construing a contract of life insurance by the law of the state where the insured was living when the policy was issued. See Restatement of Conflict of Laws (2d), 6th Tentative Draft, § 346h; *Zogg* v. *Penn Mutual Life Ins. Co.*, 2d Cir., 276 F. 2d 861 (1960); *Peterson* v. *Warren*, 31 Wis. 2d 547, 143 N. W. 2d 560 (1966). Should the issue be squarely presented we shall feel free to review the wisdom of our earlier decisions.

There is a second question to be decided. The plaintiff asked in the court below that he be allowed the penalty and attorney's fee authorized by our statute. Ark. Stat. Ann. § 66-3238 (Repl. 1966). The trial court rejected the request, holding that the Missouri statute upon that aspect of the case was controlling and that the plaintiff had not shown that the insurer's delay was

"vexatious," as the law of Missouri requires it to be. This was error. The question is essentially a procedural one, to be governed by the law of the forum. *Aetna Cas. & Surety Co.* v. *Simpson*, 228 Ark. 157, 306 S. W. 2d 117 (1957). It is true that we said in that case that "the policy matured in Arkansas and the action is brought in Arkansas." Even though the policy now before us might be said to have matured in Oklahoma, where Jerry Bowling met his death, the action is properly maintainable in Arkansas, where the plaintiff resides. We consider this to be an adequate basis for the application of our statute. The judgment will be modified on the cross-appeal to include a 12% penalty and an attorney's fee of $1,500.

Modified and affirmed.