# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 03-1307/2846

_____

Phillip Ferrell; Thomas Ferrell;    *
Clay Lowry; Donny Lowry,    *
    *
    Appellees,    *
    *  Appeals from the United States
    v.    *  District Court for the Western
    *  District of Arkansas.
West Bend Mutual Insurance Company, *
    *
    Appellant.    *

_____

Submitted: April 13, 2004
Filed: January 4, 2005

_____

Before RILEY, HANSEN, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

In these consolidated appeals, West Bend Mutual Insurance Company ("West Bend") appeals an adverse decision of the district court[1] following a bench trial, and also challenges the court's imposition of attorney's fees and prejudgment interest. We affirm.

_____

[1]The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas.

I.

In 1999, Arkansas tomato growers Phillip and Tommy Ferrell and Clay and Donny Lowry ("the tomato growers" or "growers") purchased from Hi-Tech Film, Inc. ("Hi-Tech") a plastic film meant to prevent soil from splashing onto their plants and causing blight. The tomato growers rolled the film over their fields, but after the tomato plants were planted, the film began to deteriorate, leaving large holes in some places. The holes made it difficult to irrigate the plants properly, because the exposed soil dried out quickly, while the covered areas became waterlogged. The holes also allowed rainwater to splash dirt on the plants, causing early blight. These problems resulted in stunted plants that produced less fruit, and the tomatoes that did grow were smaller than normal and suffered from sunburn, rain damage, and cracked stems. Phillip Ferrell testified that the quality of the crop with the defective film was worse than if no film had been used at all.

In August 2000, the tomato growers sued Hi-Tech in United States District Court in Arkansas, and a jury found that Hi-Tech had breached implied warranties of merchantability and fitness. The district court awarded the tomato growers $165,365 in damages and $70,950 in attorney's fees, for a total award of $236,315. West Bend, Hi-Tech's commercial general liability ("CGL") insurance provider, defended Hi-Tech in the tomato growers' suit under a reservation of right to dispute coverage. Based on diversity jurisdiction, the tomato growers then commenced the instant action in federal court seeking indemnity from West Bend. The district court conducted a bench trial, after which it awarded the tomato growers the underlying judgment, plus attorney's fees and costs, a penalty, prejudgment interest, and postjudgment interest. West Bend appeals on several grounds.

West Bend first argues that it was not subject to personal jurisdiction in the district court because the insurance company lacked sufficient contacts with Arkansas. In the district court, a West Bend attorney attested to several facts in support of this contention: West Bend is a Wisconsin company with its principal place of business in Wisconsin; it does not conduct business or have an office, employees, agents, or representatives in Arkansas; it has no bank accounts or property in Arkansas and does not solicit business there; and it is not licensed to conduct business in Arkansas. In addition, West Bend was not a party to the contract between the tomato growers and Hi-Tech, or to the underlying action against Hi-Tech. Hi-Tech's insurance policy with West Bend was sold and paid for in Wisconsin.

The insurance policy, however, contained a territory-of-coverage clause stating that the policy insured Hi-Tech against injury or property damage from occurrences in "[t]he United States of America (including its territories and possessions), Puerto Rico, and Canada." The district court reasoned that "West Bend purposefully engaged in a contract of insurance with Hi-Tech," and that "[i]n the position of scrivener and with a highly sophisticated knowledge of risk and benefit, West Bend crafted a policy whereby West Bend chose to extend the policy's coverage into Arkansas and certain other distant forums but chose to exclude some forums." The court observed that the extension of coverage to various forums made the policy more marketable, and concluded that it was "grossly reasonable" for the insurance company to anticipate litigation concerning its policies. The district court thus held that the exercise of personal jurisdiction was "fair and just and proper." Upon *de novo* review, we agree.

"A federal court may assume jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution." *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir.

1994).  Arkansas's long-arm statute extends personal jurisdiction over nonresidents to the extent permitted by the Constitution.  Ark. Code Ann. § 16-4-101(B) (Michie 1999).  The Due Process Clause requires the existence of "minimum contacts" between a defendant and the forum State.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).  The requisite minimum contacts must be based upon "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  In addition, even where "minimum contacts" are established, the Due Process Clause also forbids the exercise of personal jurisdiction where it nonetheless would be inconsistent with "traditional notions of fair play and substantial justice."  *Asahi Metal Indus. Co. v. Superior Court of Calif.*, 480 U.S. 102, 113 (1987) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

We conclude that the insurance policy's territory-of-coverage clause establishes sufficient contact between West Bend and Arkansas to satisfy the strictures of the Due Process Clause.  West Bend purposefully contracted with Hi-Tech to provide insurance coverage within foreign States, including Arkansas.  As the district court observed, West Bend presumably offered a broad "coverage territory" in order to make its policies more marketable and profitable.  Thus, not only was it foreseeable that West Bend might be sued in Arkansas in connection with a dispute relating to its policy, but the "expectation of being haled into court in a foreign state is an express feature of its policy."  *Rossman v. State Farm Mut. Auto. Ins. Co.*, 832 F.2d 282, 286 (4th Cir. 1987).  Stated differently, "litigation requiring the presence of the insurer is not only foreseeable, but it was purposefully contracted for by the insurer."  *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 914 (9th Cir. 1990).  If West Bend wished to avoid lawsuits by a third party in any particular forum, then it could have excluded that forum from its territory-of-coverage clause, although such an exclusion likely would have made its policies less

4

marketable. We thus follow the reasoning of our sister circuits in *Rossman* and *Farmers* in holding that the nationwide territory-of-coverage clause that West Bend included in its policy with Hi-Tech establishes sufficient minimum contacts with Arkansas to satisfy due process. *See also Payne v. Motorists' Mut. Ins. Cos.*, 4 F.3d 452, 455-56 (6th Cir. 1993).

West Bend relies on *OMI Holdings, Inc. v. Royal Insurance Co. of Canada (OMI)*, 149 F.3d 1086, 1092-95 (10th Cir. 1998), which criticized the analysis in *Farmers* and *Rossman* for placing what the Tenth Circuit believed was undue emphasis on the foreseeability of a lawsuit in a foreign forum. Ultimately, however, the court in *OMI* concluded that a territory-of-coverage clause *did create* minimum contacts with the forum state, *id.* at 1095, and later found that personal jurisdiction was lacking only because it would be unreasonable and inconsistent with notions of fair play and substantial justice under the circumstances of that case. *Id.* at 1095-98. Thus, the decision in *OMI* does not conflict with our finding of minimum contacts here.

We also conclude that the district court's assertion of jurisdiction comported with traditional notions of fair play and substantial justice. *See Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 713 (8th Cir. 2003). West Bend presumably had the wherewithal to defend itself in Arkansas, given that it was obligated to (and did) defend Hi-Tech in Arkansas, and the burden of litigating in Arkansas rather than Wisconsin was not unreasonable. Arkansas had an interest in the dispute, which involved Arkansas plaintiffs and Arkansas land, and the tomato growers had an interest in obtaining relief because a court already had determined that they suffered damages. There is no reason to believe that another forum would have been more efficient for resolving the dispute. Our situation is quite different from the circumstances of the Kansas lawsuit in *OMI*, where the defendants were Canadian, "the forum state ha[d] virtually no interest in litigating the case, the dispute [was] governed by Canadian law, and Kansas would not provide a more efficient forum in

which to litigate." 149 F.3d at 1096 n.2. Accordingly, we conclude that the district court did not offend traditional notions of fair play and substantial justice by assuming personal jurisdiction over West Bend in Arkansas.

III.

West Bend next contends that the tomato growers had no cause of action against the insurance company under Arkansas law. The growers' complaint asserted a right of action under an Arkansas statute that provides for direct actions against insurers based on "[a]ny policy of insurance issued or delivered in this state." Ark. Code Ann. § 23-89-101. This statute permits those Arkansas residents who have been issued or presented with policies in Arkansas to sue their insurers in Arkansas, rather than some other jurisdiction, and prevents insurance companies from using forum selection clauses to require Arkansas policyholders to litigate in inconvenient forums. Recognizing that the Hi-Tech policy was neither issued nor delivered in Arkansas, however, the growers abandoned at trial their reliance on the direct action statute. The district court nevertheless accepted the tomato growers' alternative argument that the insurance policy's express language provided a basis for the action.

West Bend argues that the Arkansas statute is the sole basis on which a claimant may bring an action against an insurance company, and that because it is inapplicable here, the tomato growers have no cause of action. West Bend's insurance policy, however, provides that "[a] person or organization may sue us to recover . . . on a final judgment against an insured obtained after an actual trial." (App. 68). West Bend cites no authority holding that the Arkansas courts would refuse to recognize a cause of action based upon such a contractual provision, and we have found none. In this case, of course, there was a final judgment against an insured (Hi-Tech) obtained after an actual trial. While the Arkansas direct action statute does not create *an additional* cause of action for a claimant where the underlying insurance policy is issued and delivered outside Arkansas, we do not

6

believe the statute purports to preclude a claimant from relying upon a right of action created by an express provision in an insurance contract and the common law. Accordingly, we reject West Bend's assertion that the plain language of its policy cannot be enforced through an action filed in Arkansas.

## IV.

West Bend also asserts that the growers' claim is foreclosed by a judgment it obtained in Wisconsin in August 2001. West Bend argues that this judgment, which declared that West Bend had no duty to defend or indemnify Hi-Tech, must be given full faith and credit in Arkansas. Shortly before the trial in the underlying Arkansas lawsuit between the tomato growers and Hi-Tech, West Bend filed a complaint in Wisconsin state court asserting that it owed no defense or obligation to Hi-Tech in connection with the Arkansas lawsuit. West Bend invited the tomato growers to join in the action, but never named them as parties. Hi-Tech, which was then bankrupt and judgment-proof, filed an answer admitting the allegations of West Bend's complaint. Faced with no dispute, the Wisconsin court then granted judgment on the pleadings in favor of West Bend.

West Bend argues that the Wisconsin judgment should have been credited by the district court in this case, and that the tomato growers' claim must fail, because they can have no right greater than the subrogor, Hi-Tech. The tomato growers, by contrast, characterize the Wisconsin action as a "sham" in which nothing was actually litigated. The district court in this case concluded that the Wisconsin judgment did not bar the tomato growers' action in Arkansas, because the growers were not a party to the Wisconsin action, and Hi-Tech had little or no incentive to obtain a full and fair adjudication in that case. The district court, therefore, thought it would be fundamentally unfair to hold the tomato growers bound by the Wisconsin judgment.

7

Under federal law, the district court was required to give the Wisconsin judgment the same preclusive effect it would have in Wisconsin state court. 28 U.S.C. § 1738; *Butler v. City of N. Little Rock*, 980 F.2d 501, 503 (8th Cir. 1992). The doctrine of issue preclusion in Wisconsin limits relitigation of an issue that was litigated in a previous action. *Paige K.B. v. Steven G.B.*, 594 N.W.2d 370, 377 (Wis. 1999). The "threshold issue" under Wisconsin law is whether the litigant against whom issue preclusion is asserted was in privity with, or had sufficient identity of interests with, a party to the prior proceeding, such that issue preclusion would comport with due process. *Id.* "If the litigant is not so closely aligned with a party in the prior proceeding as to represent the same legal interest or the litigant's interests cannot be deemed to have been litigated in the prior proceeding, the litigant's due process rights would, as a matter of law, be violated were a court to apply issue preclusion." *Id.* at 378. The second step in the analysis under Wisconsin law is "whether actually applying issue preclusion to the litigant comports with principles of fundamental fairness." *Id.* at 377. We review *de novo* the district court's decision on issue preclusion where it involves a question of law. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc.*, 346 F.3d 1160, 1164 (8th Cir. 2003), *cert. denied*, 124 S. Ct. 1697 (2004).

We agree with the district court that the Wisconsin judgment did not bar this action, because the tomato growers would not have been precluded by the judgment from proceeding against West Bend in Wisconsin state court. The interests of the tomato growers cannot be deemed to have been litigated in the Wisconsin proceeding. Hi-Tech was judgment-proof when the Wisconsin judgment was rendered, and the company already had received a defense from West Bend in the underlying action in Arkansas. Under these circumstances, as demonstrated by Hi-Tech's swift admission of the allegations in West Bend's complaint, the insured party had little incentive to litigate fully and fairly the coverage issue. *See Desotelle v. Cont'l Cas. Co.*, 400 N.W.2d 524, 527 (Wis. Ct. App. 1986) (applying collateral estoppel would be manifestly unfair where neither party to prior action had incentive to litigate issue);

8

*Paige K.B.*, 594 N.W.2d at 378 (to be in privity, parties must be so closely aligned that they represent same legal interest). Accordingly, the standards of Wisconsin law for application of issue preclusion are not satisfied, and the Wisconsin judgment does not preclude this action.

V.

On the merits of the growers' claims under the policy, West Bend argues that the insurance policy did not cover the tomato growers' judgment. Specifically, West Bend argues that (1) the breach-of-warranty damages awarded by the jury were for "economic losses," which are not covered by CGL policies under Wisconsin law, rather than for covered "property damage" resulting from "occurrences," which are covered, and (2) the policy's contractual liability exclusion applied. West Bend also argues that the attorney's fees awarded in the underlying action were not covered by the policy.

We review *de novo* the district court's interpretation of the insurance policy. *Adzick v. UNUM Life Ins. Co. of Am.*, 351 F.3d 883, 887 (8th Cir. 2003). As federal jurisdiction in this case is premised on diversity of citizenship, we look to the choice-of-law rules of the forum State to determine which law applies. *Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1393 (8th Cir. 1997). The parties agree that Wisconsin law applies, and we believe this is correct. Under Arkansas choice-of-law rules, coverage issues traditionally are resolved under the law of the State where the contract was made (i.e., Wisconsin), and Wisconsin had significant contacts with this contract. *See S. Farm Bureau Cas. Ins. Co. v. Craven*, 89 S.W.3d 369, 372-73 (Ark. Ct. App. 2002).

West Bend argues that the damages awarded to the tomato growers in its action against Hi-Tech are not covered by the insurance policy, because they were not awarded on account of "property damage." The policy covers "damages" that the

9

insured is legally obligated to pay because of "property damage" that is caused by an "occurrence." The policy defines "property damage" as "physical injury to tangible property." It defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." West Bend contends that damages based on a breach of warranty are "economic losses" that are not covered by what it describes as "occurrence-based property damage liability policies." West Bend also urges that recovery of the damages is excluded by a contract provision stating that the insurance does not apply to "'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." (App. 60).

Our analysis of these questions is influenced heavily by the recent decision of the Supreme Court of Wisconsin in *American Family Mutual Insurance Co. v. American Girl, Inc.*, 673 N.W.2d 65 (Wis.), *recons. denied*, 679 N.W.2d 548 (2004). The insured in *American Family* was a general contractor hired to design and construct a warehouse. The contractor hired a subcontractor to analyze soil conditions at the site, and the soil was compressed according to the subcontractor's advice. After the contractor built the warehouse, the warehouse began to sink, settle, and buckle, and eventually had to be demolished, due in substantial part to the subcontractor's faulty soil-engineering advice.

The insurer, American Family, sought a declaratory judgment regarding coverage under its CGL and excess insurance policies. American Family, like West Bend here, argued that "economic losses" were not within the scope of "property damage" covered by the insurance policy, and that a breach of a contract or warranty was not an "occurrence" under the policy. *Id*. at 75-76. The Wisconsin Supreme Court, examining contract language equivalent to the contract language in this case, concluded that the CGL policy covered the damage to the warehouse.

10

First, with regard to "property damage," the court held that the economic-loss doctrine was relevant only to the issue of remedy, – i.e., whether the plaintiff was confined to a contract rather than tort remedy – and that the scope of coverage for alleged "property damage" depended solely on the policy language. *Id*. at 74-75 & n.4. Reviewing the policy language, the court then concluded that the sinking, buckling, and cracking of the warehouse resulting from the soil settlement qualified as "property damage," defined in the policy as "physical injury to tangible property." *Id*. at 74-75.

Second, the court was unpersuaded by American Family's argument that because the plaintiff's claim was for breach of contract and warranty, the building's settling was not an "occurrence." The court noted that the CGL policy's grant of coverage did not expressly limit coverage to claims for tort damages, as opposed to contract damages. *Id*. at 76-77 & n.6. Based on the policy language, the court also concluded the damage to the warehouse was caused by an "occurrence" – defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions" – because the damage was not intentional or anticipated by the parties, and it occurred as a result of continuous, substantial, and harmful settlement of the soil underneath the building. *Id*. at 75-76.

Finally, the court addressed potential exclusions, including the exclusion for contractually assumed liability – the same exclusion that West Bend invokes in this appeal. The court concluded that the exclusion for contractually assumed liability applied only where the insured had contractually assumed a third party's liability, as in an indemnification or hold-harmless agreement, and that no such agreements were at issue in that case. *Id*. at 79-81.

Following *American Family*, we consider the language of the policy to determine the scope of coverage. We conclude that the tomato growers sustained "property damage" within the meaning of the policy. The tomato plants were

11

damaged as a result of Hi-Tech's defective film. The plants were stunted, undersized, sunburned, or waterlogged, and they were cracked in parts. That the damages at trial were measured in terms of lost profits or diminished gross receipts does not change the fact that property was damaged. The measure of damages is distinct from the question whether there was "property damage" under the policy, *see Wausau Tile, Inc. v. County Concrete Corp.*, 593 N.W.2d 445, 452 (Wis. 1999), and we see nothing about the manner in which damages were calculated that precludes a finding of "property damage" based on damage to the plants. *Cf. McCorkle Farms, Inc. v. Thompson*, 84 S.W.3d 884, 892 (Ark. Ct. App. 2002) (In a negligence action, "[t]he measure of damages to the crops is the value of the difference between what was actually produced and what would have otherwise been produced, less the difference between the cost of producing and gathering what was produced and the cost of producing and gathering an undamaged crop.").

We also conclude that there was an "occurrence" within the meaning of the policy. The damage to the plants was accidental and unintentional, and it occurred as a result of deterioration of the film. The plants were exposed continuously to the same harmful conditions, namely, blight, overwatering, and underwatering. These circumstances are sufficient to constitute an "occurrence." *See American Family*, 673 N.W. 2d at 76.

We reject West Bend's contention that the policy's exclusion of coverage for contractual liability precludes recovery for damages. The policy states that the insurance does not apply to property damage for which Hi-Tech was liable "by reason of the assumption of liability in a contract or agreement." The decision in *American Family* makes clear, however, that this exclusion would apply only if there were a contract or agreement between the tomato growers and Hi-Tech to assume liability for damages. *Id.* at 79-81. There is no evidence of such an agreement or contract, so the exclusion is inapplicable.

12

Finally, we believe the district court correctly determined that West Bend was liable under the policy for sums awarded to the tomato growers as attorney's fees in the underlying action against Hi-Tech. In addition to coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," (App. 60), the policy also covers certain "supplementary payments." These payments include "[a]ll costs taxed against the insured in the 'suit,'" where the "suit" is defined as a civil proceeding in which covered property damage is alleged. (App. 65, 72). The lawsuit between the tomato growers and Hi-Tech, therefore, qualified as a "suit." The Arkansas statute upon which the attorney's fee award was based states that "[i]n any civil action to recover on [a] . . . breach of contract, . . . the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected *as costs*." Ark. Code Ann. § 16-22-308 (emphasis added). Thus, we conclude that the attorney's fee award was part of the "costs" taxed against the insured, Hi-Tech, in the underlying lawsuit. As such, the award is a "supplementary payment" covered under the policy.

VI.

The district court awarded the tomato growers attorney's fees and a 12% penalty on their judgment against West Bend under Ark. Code Ann. § 23-79-208(a)(1). That section provides:

> In all cases in which loss occurs and the . . . insurance company . . . fail[s] to pay the losses within the time specified in the policy after demand is made, the . . . corporation . . . shall be liable to pay the holder of the policy . . . in addition to the amount of the loss, twelve percent (12%) damages upon the amount of the loss, together with all reasonable attorney's fees for the prosecution and collection of the loss.

West Bend contends that the district court erred by concluding that the tomato growers were entitled to fees and a penalty under the Arkansas statute. We review

13

*de novo* the district court's interpretation of the statute. *Salve Regina College v. Russell*, 499 U.S. 225, 231 (1991).

In a diversity case, state law generally governs the question whether there is a right to attorney's fees. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975). Because Arkansas is the forum, we apply the Arkansas choice-of-law rules in determining which state law governs the issue. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In conducting the choice-of-law analysis, however, our conclusion that the matter of attorney's fees is "substantive" for purposes of *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) – such that state rather than federal law governs – does not necessarily establish that the issue of attorney's fees is "substantive" rather than "procedural" for purposes of conflict of laws. The two inquiries are distinct. *See Sun Oil Co. v. Wortman*, 486 U.S. 717, 726 (1988); *Boyd Rosene & Assoc. v. Kansas Mun. Gas Agency*, 174 F.3d 1115, 1118 (10th Cir. 1999).

The Supreme Court of Arkansas considers the allowance of the statutory penalty and attorney's fees to be "a procedural matter governed by the laws of the State of Arkansas." *USAA Life Ins. Co. v. Boyce*, 745 S.W.2d 136, 138 (Ark. 1988). Accordingly, the Supreme Court of Arkansas has applied Arkansas law relating to attorney's fees and penalties where Arkansas is the forum, even where the law of another State governs substantive issues, including the interpretation of an insurance contract. *See Amer. Physicians Ins. Co. v. Hruska*, 428 S.W.2d 622, 627-28 (Ark. 1968); *New Empire Life Ins. Co. v. Bowling*, 411 S.W.2d 863, 865 (Ark. 1967). We thus conclude that Arkansas law, rather than Wisconsin law, governs the awarding of attorney's fees and penalties. *See also City of Carter Lake v. Aetna Cas. & Sur. Co.*, 604 F.2d 1052, 1062 (8th Cir. 1979) (where Nebraska was forum and Iowa law governed contract, but Nebraska Supreme Court stated that attorney fee statute was "procedural," the law of Nebraska applied to issue of attorney fees).

14

Under Arkansas law, § 23-79-208, concerning fees and penalties, may be applied only to policies having a "connection" with Arkansas. *Allstate Ins. Co. v. Ormand*, 480 S.W.2d 939, 940 (Ark. 1972). To have the requisite "connection" with Arkansas, "[s]omething more than jurisdiction and venue for the purpose of rendition of judgment upon the policy is required." *Boyce*, 745 S.W.2d at 138. For example, the Supreme Court of Arkansas has held that the Arkansas residence of a beneficiary of a life insurance policy provides sufficient "connection" to apply § 23-79-208, even where the policy was issued and matured outside the State. *Id.*; *New Empire Life Ins. Co. v. Bowling*, 411 S.W.2d 863, 864-65 (Ark. 1967); *see also Aetna Cas. & Sur. Co. v. Simpson*, 306 S.W.2d 117, 123 (Ark. 1957) (fee statute applied where policy matured in Arkansas and lawsuit initiated in Arkansas).

We conclude that there was sufficient connection between this dispute and the State of Arkansas to support the application of the Arkansas statute on attorney's fees and penalties. The insurance policy matured in Arkansas, the injury occurred in Arkansas, the damaged property was owned by Arkansas residents, and the Arkansas residents brought suit and obtained a judgment in Arkansas. In light of the precedents from the Supreme Court of Arkansas, we conclude that it was proper for the district court to assess attorney's fees and penalties under § 23-79-208.

VII.

After the district court entered judgment, the tomato growers moved for attorney's fees under § 23-79-208, plus $8,129.36 in prejudgment interest on the underlying judgment. West Bend argued that prejudgment interest should have been only 3.5%, which was the rate of postjudgment interest imposed by the district court in the underlying action against Hi-Tech. The district court in this case awarded 6% prejudgment interest on the underlying judgment ($236,315), and awarded 1.79% postjudgment interest. West Bend renews its argument that the prejudgment interest award was error.

15

We review the award of prejudgment interest for abuse of discretion, applying Arkansas law. *See R & B Appliance Parts, Inc. v. Amana Co.*, 258 F.3d 783, 787 (8th Cir. 2001). In Arkansas, prejudgment interest must be awarded if damages can be determined mathematically or without reliance on opinion or discretion. *See Ozarks Unlimited Res. Coop, Inc. v. Daniels*, 969 S.W.2d 169, 174 (Ark. 1998). When no interest rate has been agreed to by the parties, Arkansas limits prejudgment interest to 6%. *Shepherd v. State Auto Prop. & Cas. Ins. Co.*, 850 S.W.2d 324, 331 (Ark. 1993). We conclude the district court did not abuse its discretion in awarding prejudgment interest of 6%, because the damages were clearly established and the parties did not agree to any other interest rate. West Bend cites no authority that binds the district court to apply the postjudgment interest rate applied by the court in the action against Hi-Tech, and we do not believe the district court was required to do so. The second action was distinct from the first, and it involved the separate question whether West Bend was obligated to satisfy the judgment against Hi-Tech. While the district court might have applied the same interest rate to which Hi-Tech was subject, we hold that the court was within its discretion to select a different rate within the range permitted by Arkansas law.

\* \* \*

For the foregoing reasons, we affirm the judgment of the district court.
_____

16